[Civ. No. 41791. First Dist., Div. Four. Jan. 19, 1978.]

FRANCINE GALLEGOS et al., Plaintiffs and Appellants, v.
STATE BOARD OF FORESTRY, Defendant and Respondent;
CHENOWETH LUMBER COMPANY, Real Party in Interest
and Respondent.

946

948

**COUNSEL**

Bonnie Dalton and Elliot Lee Daum for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, R. H. Connett, Assistant Attorney General, and Joel S. Moskowitz, Deputy Attorney General, for Defendant and Respondent.

William B. Dillon and Robert C. Petersen for Real Party in Interest and Respondent.

Ronald A. Zumbrun, Raymond M. Momboisse and Robin L. Rivett as Amici Curiae on behalf of Defendant and Respondent and Real Party in Interest and Respondent.

## OPINION

CHRISTIAN, J.—Francine Gallegos, Louise Patterson and the Camp Meeker Improvement Association have appealed from a judgment denying a writ of mandate to annul an order of respondent California State Board of Forestry which had approved a timber harvesting plan submitted by real party in interest Chenoweth Lumber Company (hereinafter Chenoweth). We reverse the judgment.

The initial timber harvesting plan filed with respondent Board of Forestry covered 77 acres in the Camp Meeker area of Sonoma County. This initial THP was withdrawn; a second plan was filed later in 1976.

Pursuant to rules of the Department of Forestry, a preharvest inspection of the area to be logged was conducted by specialists sent by the Department of Forestry and other interested agencies. After the inspection, several agencies submitted comments and recommendations. The Department of Health registered objections to Chenoweth's plan, stating that it posed a threat to the quantity and quality of water in the Camp Meeker area. The Department of Forestry eventually disapproved the plan on the ground that it did not conform to the rules of the State Board of Forestry, with the Forest Practice Act of 1973 (Pub. Resources Code, § 4511 et seq.) and with Public Resources Code sections 21000 and 21001. The department's most specific objection to the plan was that the proposed logging would adversely affect the Camp Meeker watershed; it was pointed out that water pipes located within the area of planned logging were exposed and unprotected and that there was danger that these pipes would be damaged during logging, thus impairing the supply of water to the community of Camp Meeker.

Chenoweth appealed to the Board of Forestry. Following a hearing, the board reversed the decision of the Department of Forestry and granted a permit for the proposed logging. Appellants sought a writ of mandate to annul the decision of the Board of Forestry. The superior

court denied the writ after reviewing the administrative record, and the present appeal followed.

■ Appellants contend that a fundamental vested right was at stake in the present case and that the trial court should therefore have applied its independent judgment in reviewing the factual findings of the Board of Forestry (citing *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 32 [112 Cal.Rptr. 805, 520 P.2d 29]; *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 144 [93 Cal.Rptr. 234, 481 P.2d 242]).

Had Chenoweth sought the writ of mandate below, no fundamental vested right of Chenoweth would have been involved; an applicant for a timber harvesting license does not have a vested right to the issuance of such a license. (See *Patterson* v. *Central Coast Regional Com.* (1976) 58 Cal.App.3d 833, 843-845 [130 Cal.Rptr. 169]; *Davis* v. *California Coastal Zone Conservation Com.* (1976) 57 Cal.App.3d 700, 708 [129 Cal.Rptr. 417].) Appellants contend, however, that they have a fundamental vested right in Chenoweth's not obtaining a timber harvesting license because the proposed logging operation could cause irreparable harm to the water supply which they depend on; it is also claimed that the project enhances the danger of fire in the area. The interests of appellants and of the people of California in the forest resources and timberlands of the state and in the quantity and quality of the water resources of the state are, within the meaning of *Bixby* and *Strumsky,* fundamental. (See Pub. Resources Code, § 4512; *Sierra Club* v. *California Coastal Conservation Com.* (1976) 58 Cal.App.3d 149, 155 [129 Cal.Rptr. 743].) However, although a fundamental right is involved, neither appellants nor the public has any present possessory, or vested, right in the timberlands in question. (See *Sierra Club* v. *California Coastal Conservation Com.,* *supra,* 58 Cal.App.3d at p. 155; see also *Mountain Defense League* v. *Board of Supervisors* (1977) 65 Cal.App.3d 723, 730 [135 Cal.Rptr. 588]; *Plan for Arcadia, Inc.* v. *City Council of Arcadia* (1974) 42 Cal.App.3d 712, 725 [117 Cal.Rptr. 96].) It was not error for the trial court to apply the substantial evidence test in reviewing the factual findings of the board.

■ Appellants contend that the evidence does not support the board's finding that "[t]he plan as finally amended should adequately mitigate any adverse effects upon the quantity and quality of water supplied by that portion of the Camp Meeker Water System located within the proposed timber harvesting area." It is true that there was evidence that the watershed would suffer from the proposed logging

operations. But the finding that the final plan adequately mitigated any adverse effects upon the quantity and quality of the water supply is supported by substantial evidence. The plan provided that all water supply lines would be protected during logging and that any lines damaged would be repaired immediately by the permittee. Chenoweth had amended its plan to make provision for protecting the entire watershed. On the basis of this amendment, the Department of Health withdrew its objections to the plan. Further to protect the springs, water pipes and tanks, Chenoweth undertook to mark all trees for inspection prior to felling; specified limits and procedures were agreed to for the purpose of preventing silt and debris from being deposited in springs and water courses. It was also agreed that no heavy equipment would be operated within the stream-protection zones except at approved stream crossings. Thus, substantial evidence supports the finding that the amendments to the plan provided adequate mitigation measures with respect to the quantity and quality of the Camp Meeker water supply.

 Appellants contend that the findings of respondent board are inadequate because the findings fail "to bridge the analytic gap between the raw evidence and ultimate decision or order" of the board as required by *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 515 [113 Cal.Rptr. 836, 522 P.2d 12].  Under section 1094.5 of the Code of Civil Procedure, the reviewing court must determine both whether substantial evidence supports the administrative agency's findings and whether the findings support the agency's decision. (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d at pp. 514-515.)  Thus, when an administrative agency is exercising quasi-judicial powers, the agency must make findings which sufficiently articulate the factors upon which the agency's decision is based so as to permit meaningful review. (11 Cal.3d at pp. 516-517.)

The agency's findings need not be stated with the formality required in judicial proceedings and they may be included as part of the agency's order. (*Mountain Defense League* v. *Board of Supervisors, supra,* 65 Cal.App.3d 723, 731; *Hadley* v. *City of Ontario* (1974) 43 Cal.App.3d 121, 128 [117 Cal.Rptr. 513].) The findings are sufficient if they "apprise the interested parties and the courts of the bases for the administrative action." (*San Francisco Ecology Center* v. *City and County of San Francisco* (1975) 48 Cal.App.3d 584, 596 [122 Cal.Rptr. 100]; see *Mountain Defense League* v. *Board of Supervisors, supra,* 65 Cal.App.3d at p. 731.) The agency's findings will be held adequate if they enable the

reviewing court to examine the agency's "mode of analysis." (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d 506, 516.)

◼ In the present case, the Board of Forestry made the following findings:

"1. Appellant provided numerous amendments to the plan during the formal review process in consultation with the foresters of the Department of Forestry. The plan as finally amended should adequately mitigate any adverse effects upon the quantity and quality of water supplied to that portion of the Camp Meeker Water System located within the proposed timber harvesting plan.

"2. The Board feels no necessity to delay its approval of the plan pending investigation and action by the California Public Utilities Commission since such action will not affect waters produced by the land pursuant to the timber harvesting plan.

"3. The Board was sufficiently assured that adequate protection for the water supply, storage facilities and pipes from damage by the logging operation would be afforded by the appellant.

"4. After considering the fire protection measures provided in the timber harvesting plan, the Board finds that the plan conforms with the fire protection requirements of the Act and rules and that these measures conform adequately to the rules and the law."

These findings are sufficient to apprise reviewing courts of the bases of the board's reasoning and action.

◼ Appellants contend that respondent Board of Forestry failed to respond adequately to significant environmental points raised during the evaluation process. ◼ Timber harvesting operations, carried on pursuant to the Forest Practice Act of 1973 (Pub. Resources Code, § 4511 et seq.) and the Forest Practice Rules (Cal. Admin. Code, tit. 14, § 911 et seq.) are subject to the requirements of the California Environmental Quality Act of 1970 (Pub. Resources Code, § 21000 et seq. [hereinafter CEQA]) and the administrative guidelines established pursuant thereto (Cal. Admin. Code, tit. 14, § 15000 et seq.). (*Natural Resources Defense Council, Inc.* v. *Arcata Nat. Corp.* (1976) 59 Cal.App.3d 959, 963-969 [131 Cal.Rptr. 172].) One of the central requirements of CEQA and the state

guidelines is that an environmental impact report be prepared whenever a proposed project may have a significant effect upon the environment (see Cal. Admin. Code, tit. 14, § 15084, subd. (b)). The environmental impact report is designed to provide information so that public agencies can "evaluate a project to determine whether it may have a significant effect on the environment, to examine and institute methods of reducing adverse impacts, and to consider alternatives to the project as proposed." (Cal. Admin. Code, tit. 14, § 15012.)

In the event that the secretary of the resources agency certifies that a regulatory program of a state agency requires a plan containing environmental information which is the functional equivalent of an environmental impact report, Public Resources Code section 21080.5 provides for an exemption from the requirement to produce an environmental impact report (EIR). ■ The Secretary of the Resources Agency has certified that the regulation of timber operations on private lands in California by the Board of Forestry meets the functional equivalent criteria contained in Public Resources Code section 21080.5, and accordingly, the timber industry was exempt from the full-scale EIR prescribed in section 21100.

In order to qualify for certification pursuant to section 21080.5, the regulatory program must meet all the criteria set forth in that statute, including a requirement that "final action on the issuance of a lease, permit, license, certificate, or other entitlement for use include the written responses of the issuing authority to significant environmental points raised during the evaluation process." (Pub. Resources Code, § 21080.5, subd. (b)(2)(iv).) In the certification order of January 6, 1976, the Secretary of the Resources Agency pointed to Board of Forestry regulations, sections 1037.7 and 1059 (Cal. Admin. Code, tit. 14, §§ 1037.7, 1059), as meeting the requirement of Public Resources Code section 21080.5, subdivision (b)(2)(iv). The certification order states, in relevant part: "Regulations Sections 1037.7 and 1059 meet [the requirement of response to significant environmental points]. Section 1037.7 requires the State Forester to include in the notice of conformance a written response to significant environmental points raised during the evaluation process. The notice of conformance is the notice of approval of a timber harvesting plan by the State Forester. Section 1059 provides that *if the Board of Forestry on appeal approves a timber harvesting plan, its order of approval shall include a written response to significant environmental points raised during the evaluation process.*" (Italics added.)

In interpreting an analogous requirement under the state guidelines issued pursuant to CEQA (see Cal. Admin. Code, tit. 14, § 15146, subd. (a)(4), § 15146, subd. (b)), the courts have held that the public agency must provide (in the final EIR itself) written responses that evince a good faith and reasoned analysis why specific comments and objections were not accepted. The public agency need not respond to every comment raised in the course of the review and consultation process, but it must specifically respond to the most significant environmental questions raised in opposition to the project. (See *People* v. *County of Kern* (1974) 39 Cal.App.3d 830 [115 Cal.Rptr. 67]; *San Francisco Ecology Center* v. *City and County of San Francisco, supra,* 48 Cal.App.3d 584, 596.) In *People* v. *County of Kern, supra,* 39 Cal.App.3d at page 841, the court stated that "[the public agency] must describe the disposition of each of the significant environmental issues raised and must particularly set forth in detail the reasons why the particular comments and objections were rejected and why the [public agency] considered the development of the project to be of overriding importance."

■ In the present case, numerous environmental objections were raised concerning threats to the water supply and watershed due to erosion, silvicultural method, logging method, additional debris and slash, possible rupture of water conduits and the removal of shade trees over holding tanks. Objections were raised with regard to the additional fire hazards created by the proposed logging operation. Numerous other specific and detailed environmental objections were raised. Under section 1059 of the forestry guidelines (Cal. Admin. Code, tit. 14, § 1059; see also § 1037.7), the order of respondent Board of Forestry approving the timber harvesting plan in question was required to include "written response . . . to significant environmental points raised during the evaluation process." The board's order here does not state reasons why the specific comments and objections received from the interested agencies and private groups were not accepted. There is no reasoned response to the significant environmental issues raised. The order addresses two of the most significant environmental issues raised— threats to the water system and the fire hazard—by simply stating that "[t]he plan as finally amended should adequately mitigate any adverse effects upon [the water system]" and that "the Board finds that the plan conforms with the fire protection requirements of the Act and rules . . . ." These responses are totally conclusory; they do not adequately respond to the significant environmental points raised during the evaluation process.

Appellants contend that respondent board failed to require the use of feasible alternatives and mitigation measures that would substantially lessen the adverse impact which the timber harvesting operation may have on the environment. But appellants have not pointed to any substantial evidence that any such measures that were feasible were rejected.

Other contentions advanced by appellants are insubstantial and do not require discussion.

The judgment is reversed with directions to issue a writ of mandamus requiring respondent Board of Forestry to vacate its order and take further proceedings consistent with the views expressed herein.

Caldecott, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied February 10, 1978.