[Civ. No. 6458. Fifth Dist. Nov. 1, 1983.]

WALTER H. LEIMERT COMPANY et al., Plaintiffs and Appellants, v. CALIFORNIA COASTAL COMMISSION et al., Defendants and Respondents.

224

Counsel

Ogle, Gallo & Merzon, Ray A. Gallo, Andre, Morris & Buttery and Dennis D. Law for Plaintiffs and Appellants.

George Deukmejian and John K. Van de Kamp, Attorneys General, N. Gregory Taylor, Assistant Attorney General, and Steven H. Kaufmann, Deputy Attorney General, for Defendants and Respondents.

Opinion

FRANSON, Acting P. J.—

### The Case Below

Appellants' second amended complaint against respondents California Coastal Commission and South Central Coast Regional Commission alleged four causes of action: (1) for declaratory relief—alleging that respondents by three administrative decisions denied appellants equal protection of the laws, procedural due process, impaired contractual obligations and deprived appellants of property without due process of law; (2) for damages based on intentional interference with contractual relations; (3) for damages based

on intentional interference with prospective business advantage; and (4) damages based on inverse condemnation.

The trial court sustained respondents' demurrers to appellants' three causes of action for damages without leave to amend. However, it denied respondents' motion for a judgment on the pleading as to the declaratory relief action and ordered a bifurcated trial on the affirmative defenses asserted by respondents to the declaratory relief action. After a trial on the affirmative defenses, the trial court made the following pertinent findings:

1. Appellants failed to exhaust their available administrative remedies;

2. Even assuming exhaustion could be excused, appellants failed to file the declaratory relief action within 60 days of the final decision of respondent regional commission which they sought to challenge; therefore, the action is barred by the statute of limitations set forth in Public Resources Code section 30801;[1]

3. Appellants failed to present to the trial court a complete and certified record of the administrative proceedings which could be reviewed by the court within the purview of the administrative mandamus statute, Code of Civil Procedure section 1094.5.

A judgment denying appellants' application for declaratory relief was entered by the trial court. Thereafter, appellants filed this appeal from the judgment including the sustaining of the demurrers to the three causes of action for damages.

## The Facts

The facts are not in serious dispute. Appellants are the owners of certain real property in the Cambria Pines area of San Luis Obispo County. Beginning in 1969, they commenced steps to subdivide and develop that property. Three tentative tract maps—Nos. 420, 358, 384 (revised)—were approved and subdivision improvements were constructed.

On March 14, 1969, appellants entered into a contract with the predecessor of the Cambria Community Services District, the Cambria Community

---

[1]Public Resources Code section 30801 in pertinent part provides: "Any aggrieved person shall have a right to judicial review of any decision or action of the commission or a regional commission by filing a petition for a writ of mandate in accordance with the provisions of Section 1094.5 of the Code of Civil Procedure, within 60 days after such decision or action has become final."

Water District, to provide water service to those tracts. Appellants paid the district $25,000, paid for certain improvements and conveyed property for a storage tank to the district. No performance date was set forth in the contract. The contract contemplated that the district would provide water to the three tracts when each received subdivision approval and when appellants thereafter installed an "intract water system" in connection with the lots resulting from each subdivision approval.

Development thereafter proceeded on the three tracts as each received final subdivision approval. Tract No. 358 was not, however, completely developed. A 62-acre portion of that undeveloped property was redesignated as tentative tract No. 543, and that tentative tract, located in an extensive Monterey pine forest on the urban fringe of Cambria, is the focus of the instant lawsuit. All of the tracts, including tentative tract No. 543, are covered by the contract with the Cambria Community Services District. Only the three approved tracts, however, are currently being serviced by the district.

On June 9, 1977, the Cambria Community Services District applied to the then South Central Coast Regional Commission[2] for a coastal permit to rehabilitate the existing Cambria water distribution system and to develop a new water source for the district users by the drilling of wells in the San Simeon Creek groundwater basin. Public notice of the regional commission hearings on the permit application was provided to adjacent landowners and to residents of Cambria by publication in the San Luis Obispo County and Cambria newspapers, and additionally by posting the property. No specific notice of the hearings was provided to appellants.

On July 29, 1977, the regional commission opened hearings on the permit application. A staff summary and recommendation was prepared and submitted to the regional commission in connection with the application. While appellants had no advance knowledge of the proceedings on the permit application, their legal representative did coincidentally attend the hearing. Upon hearing the matter, he brought the 1969 contract to the regional commission's attention and spoke at length to appellants' interests. The regional

---

[2]As respondents point out, persons wishing to undertake a "development" within the defined coastal zone are required to obtain a coastal development permit. (Pub. Resources Code, § 30600, subd. (a).) At the time of the services district's application, coastal permits were initially sought from the appropriate regional commission, subject to appeal to the state coastal commission. (See former Pub. Resources Code, §§ 30600-30602.) The regional commissions terminated by operation of law on June 30, 1981. (See former Pub. Resources Code, § 30305.) The California Coastal Commission thereafter succeeded "to any and all of such regional commission's obligations, powers, duties, responsibilities, benefits, or legal interests." (Pub. Resources Code, § 30305.)

commission voted to continue the hearing for two weeks to August 12, 1977. At the conclusion of the hearing, appellants' counsel requested of the regional commission "to be put on notice of what happens, and to be consulted if the attorneys would like to get my input into this. . . ."

In the two-week period intervening the regional commission hearings, appellants' counsel spoke with the Attorney General's representative to the regional commission concerning the conditions proposed to be imposed as a condition of approving the services district's permit application. Thereafter, at the August 12, 1977, hearing, he again addressed the regional commission at length concerning appellants' interests.

At the conclusion of the August 12, 1977, hearing, the regional commission voted to approve the services district's permit application subject to certain conditions, including one requiring that: "Prior to the certification of the appropriate Local Coastal Program, the District shall neither guarantee nor promise to deliver any amount of the 1230 acre feet of water to be derived from the wells located in the area known as the Bonomi Ranch in the San Simeon Creek groundwater basin to any individual or entity whose property is located outside of its Assessment District Nos. 1 and 2 and Subdivision Tracts Nos. 358, 384, and 420. Provided, however, that should the Commission prior to the certification of the appropriate Local Coastal Program grant a development permit for the subdivision of any land within the District which is outside of Assessment District Nos. 1 and 2 and Subdivision Tracts Nos. 358, 384 and 420, then the District may provide water service from this 1230 acre feet to such land and provided further, that the applicant may utilize portions of this 1230 acre feet of water to serve the following individuals and entities whose property is located outside of the District's present boundaries, but with which the District has existing water service agreements:

"a) Air Force Radar Station

"b) Sibley Ranch -agricultural uses

"c) YMCA Camp

"d) Cambria Cemetery [sic]

"e) San Simeon State Park

"Since the intent of the condition is to avoid premature commitment of any lands within the District to other than presently existing uses before

adequate Coastal Planning has been done at the local level, the District shall not:

"a. Cause to be assessed for benefit received from this project,

"b. Levee [*sic*] any stand by [*sic*] fees or,

"c. Accept any future payment in exchange for the promise to serve or to issue water permits for or to annex,

". . . any property which is not located in the District's Assessment District Nos. 1 and 2 and Subdivision Tracts Nos. 358, 384 and 420 for which have not been subdivided pursuant to a Coastal Development Permit granted by the Commission subsequent to the effective date of this permit and prior to the certification of the appropriate Local Coastal Program."

The regional commission also adopted findings to support its decision. With respect to the above condition, it found, inter alia, that the new water source would be capable of serving 3,800 dwelling units (or 7,600 persons) or, put another way, the existing households in Cambria plus an additional 2,300 new households (48 percent of the existing vacant parcels in the developed areas of the district). Thus, allegedly in conformance with section 30250 of the coastal act, the commission found that prior to certification of the local coastal program: "[T]he location of the new development should be limited to the existing developed [areas] which [are] able to accommodate it and the area of service and benefit should be limited to those specific areas. In addition, the new development served should be limited to 3,800 households to assure that the demand of the water resource is not exceeded."

Appellants thereafter neither administratively appealed this regional commission decision to the California Coastal Commission nor sought to challenge either it or the above condition in an action in administrative mandamus as required by section 30801 of the coastal act. (Pub. Resources Code, § 30000 et seq.)

According to appellants, they did not appeal the decision imposing the condition upon the district to respondent coastal commission, in part because financing would have been jeopardized for the district improvements if the project were delayed in any way. More importantly, however, appellants argue that they did not appeal due to the fact that, under the express terms of the condition, no injury would result to appellants if their proposed

development permit were granted since in such a case under the conditions imposed the district could honor its contract with appellants.

On August 12, 1977, appellants' application for a vested right to subdivide tentative tract No. 543 was denied by the regional commission. On September 12, 1977, appellants applied for a coastal permit to subdivide that tentative tract. Ultimately, on July 13, 1978, following a hearing, the regional commission denied that application, again adopting findings to support its decision. This subdivision denial was predicated on several grounds under the coastal act, including premature siting of the subdivision at the fringe of the existing developed area and potential for additional pressures for further development outside the existing urban area of Cambria; increased competition for the already limited water resource within the district; inadequate provision of sewage disposal; adverse environmental impact on the extensive pine forest area; and potential for water quality and erosional problems from the proposed development. Owing to those concerns, the regional commission further found that it could not make its findings required under Public Resources Code section 30604 that the proposed subdivision would not prejudice the ability of the county to prepare a local coastal program for this area. The commission stated:

"Most importantly to approve this development would be contrary to PRC [Pub. Resources Code] 30250(a) which addresses the issue of siting new development, and would prejudice the ability of the County of San Luis Obispo to concentrate development and locate new development consistent with the availability of public services and in concert with protecting environmentally sensitive habitat areas. To approve this development would set a precedence and possibly commit the County to approving additional development which would be representative of step-development.

"The issue of the siting of new development at the urban fringe should most appropriately be addressed in the planning process of the LCP and not on a project by project basis."

The regional commission's denials of appellants' vested rights claim and subdivision permit application were thereafter consolidated for appeal to the California Coastal Commission. The state body thereafter found the appeals to present no substantial issue.

#### DISCUSSION

I. ▮ *Administrative mandamus, rather than declaratory relief, is the proper remedy for challenging coastal commission permit decisions.*

The law is well established that an action for declaratory relief is not appropriate to review an administrative decision. (*State of California* v.

*Superior Court (Veta)* (1974) 12 Cal.3d 237, 249 [115 Cal.Rptr. 497, 524 P.2d 1281]; *Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110, 127 [109 Cal.Rptr. 799, 514 P.2d 111]; *Scott* v. *City of Indian Wells* (1972) 6 Cal.3d 541, 546 [99 Cal.Rptr. 745, 492 P.2d 1137].) *Veta* specifically held: "[I]nsofar as the fourth cause of action seeks to challenge the application of the [coastal act] to [the developer Veta], the Commission is correct that Veta is essentially seeking to review the validity of an administrative action and, as discussed above, such review is properly brought under the provisions of section 1094.5 of the Code of Civil Procedure rather than by means of declaratory relief." (12 Cal.3d at p. 251.) A declaratory relief action is an appropriate remedy only if the party is seeking a declaration that a statute controlling development of coastal lands is actually unconstitutional. (*Agins* v. *City of Tiburon* (1979) 24 Cal.3d 266, 272-273 [157 Cal.Rptr. 372, 598 P.2d 25].)

Appellants' first cause of action does not challenge the constitutionality of the coastal act or any of its provisions; it merely alleges that the act has been unconstitutionally applied as to appellants' property. Thus, declaratory relief does not lie.

The cases cited by appellants do not support their contention that declaratory relief is appropriate. *Sneed* v. *County of Riverside* (1963) 218 Cal.App.2d 205 [32 Cal.Rptr. 318] does not discuss the remedy of declaratory relief. *Furey* v. *City of Sacramento* (1979) 24 Cal.3d 862 [157 Cal.Rptr. 684, 598 P.2d 844] is distinguishable. In *Furey,* several public entities, including the City of Sacramento, created a special assessment district in an area intended for transition from agriculture to urban development. After the city annexed the area, the county laid sewer lines and built a sewage treatment plant. Assessments were made against the plaintiff's property for these improvements. Subsequently, the city amended its zoning ordinances to retain the land as permanent agricultural and open space. Plaintiff Furey's request for reassessment of the costs of the improvements and for a refund was not responded to. The Supreme Court held that if the above facts were true, relief would lie by way of declaratory relief or mandate.

The holding in *Furey* was founded on estoppel against the city. (24 Cal.3d at pp. 872-873.) Estoppel does not apply in the instant case because no local government agency changed its mind about the land use proposed by appellants nor did a governmental agency act in any manner which would lead appellants to alter their position to their detriment.

II. *Appellants were required to exhaust their administrative remedies before bringing this action.*

■    Exhaustion of administrative remedies is a jurisdictional prerequisite to judicial review of actions of an administrative agency. (*La Costa Beach Homeowners Assn.* v. *Wayne* (1979) 89 Cal.App.3d 327, 330 [152 Cal.Rptr. 355].) A party cannot circumvent the exhaustion doctrine by bringing actions other than administrative mandamus such as actions for declaratory relief. (*Bleeck* v. *State Board of Optometry* (1971) 18 Cal.App.3d 415, 432 [95 Cal.Rptr. 860].) The doctrine has been specifically applied to review of coastal commission actions. (See, e.g., *Grant* v. *Superior Court* (1978) 80 Cal.App.3d 606, 608-609 [145 Cal.Rptr. 699].)

■    Public Resources Code section 30625 provides for appeal of any administrative action on a coastal development permit to the commission by any "aggrieved person." (See also Cal. Admin. Code, tit. 14, § 13111.)

" '[A]ggrieved person' means any person who, in person or through a representative, appeared at a public hearing of the commission, regional commission, local government . . . in connection with the decision or action appealed . . . ." (Pub. Resources Code, § 30801.) Appellants were clearly aggrieved persons because their counsel appeared and represented them. Moreover, appellants' counsel has acknowledged that appellants had the right to appeal from the regional commission decision on the district's permit application.

Appellants' argument that the word "aggrieved" connotes some form of injury is belied by the language of section 30801. There is no requirement that appellants be injured in the sense of a loss of contract or property rights before they may be deemed "aggrieved" parties nor does the language of the statute support their argument that as "nonparties" appellants were not parties to the district application and had no special notice of those proceedings.[3]  ■ ■■■  Thus, the trial court correctly ruled that appel-

---

[3]Appellants' reliance on *Environmental Law Fund, Inc.* v. *Town of Corte Madera* (1975) 49 Cal.App.3d 105 [122 Cal.Rptr. 282] is misplaced. In that case the court excused the exhaustion requirement where the persons challenging a city decision to allow a subdivision were private parties not appearing at the administrative proceedings and asserted purely public rights. In contrast, in the instant case, appellants are private persons asserting purely private rights. Moreover, appellants appeared at both hearings before the regional commission and spoke at length regarding their interests.

lants had not exhausted their administrative remedies; hence, the complaint for declaratory relief would not lie.[4]

III. ■ *Appellants were required to file this action within the 60-day statute of limitations set forth in Public Resources Code section 30801.*

Public Resources Code section 30801 provides: "Any aggrieved person shall have the right to judicial review of any decision or action of the commission or regional commission by filing a petition for writ of mandate in accordance with the provisions of section 1094.5 of the Code of Civil Procedure, within 60 days after such decision or action has become final." Failure to file a petition for mandate, as required by this provision, renders the commission's decision "immune" from collateral attack. (See *Briggs* v. *State of California* (1979) 98 Cal.App.3d 190, 196, fn. 3 [159 Cal.Rptr. 390]; see also *Sierra Club, Inc.* v. *California Coastal Com.* (1979) 95 Cal.App.3d 495 [157 Cal.Rptr. 190].) Appellants' contention that the 60-day statute of limitations does not run until actual injury is suffered, i.e., appellants did not suffer actual injury until the regional commission denied appellants' development permit, unduly restricts the language of the statute. We decline to interpret the statute to hold that appellants were not required to file their suit until after the development permit had been denied.

IV. *The court correctly sustained respondents' demurrer to the second, third and fourth causes of action.*

As to the second and third causes of action involving intentional torts—interference with contractual relations and interference with prospective business advantage, we reiterate our holding that administrative mandamus is the "proper and sole remedy" for challenging or seeking review of the coastal commission permit matter. (See *Agins* v. *City of Tiburon, supra,* 24 Cal.3d 266, 272-273.) Thus, appellants are precluded from proceeding on the two tort theories.

---

[4]Appellants also argue that they need not have exhausted their administrative remedies because the doctrine does not apply where the government entity invades existing contractual rights. This argument, however, is dependent upon whether appellants can assert some of the causes of action that were demurred to.

Appellants further argue that the exhaustion doctrine does not apply when an administrative agency acts in excess of its jurisdiction. Respondents point out, however, that although the issue whether the commission acted in excess of its jurisdiction was raised below, it was not raised as a basis for excusing the requirement that administrative remedies be exhausted. Appellants appear to concede this when they note in their reply brief: "While it was not specified that the argument was being raised as the basis for an excuse from exhaustion of administrative remedies, the argument was made and presented to the court for its consideration." A party may not for the first time on appeal change its theory or raise issues not raised below. (*Estate of Westerman* (1968) 68 Cal.2d 267, 279 [66 Cal.Rptr. 29, 437 P.2d 517].)

■ Furthermore, respondent coastal commission is a public agency. (Gov. Code, § 811.2.) Under Government Code section 818.4, therefore, it is "not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where the public entity or an employee of the public entity is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked." Appellants' damage claims are clearly barred by this immunity.

■ In the Senate's Legislative Committee comment on this section, it is noted that "[d]irect review of this type of action is usually available through writ proceedings . . . ." Writ review is explicitly provided for here in Public Resources Code section 30801. As noted, this is the appropriate and "sole remedy" available to appellants. (*Agins* v. *Tiburon, supra,* 24 Cal.3d at p. 273.) Appellants' failure to seek administrative mandamus as prescribed by Public Resources Code section 30801 therefore forecloses judicial review completely, including these damage claims. (Cf. *Old Town Dev. Corp.* v. *Urban Renewal Agency* (1967) 249 Cal.App.2d 313, 334 [57 Cal.Rptr. 426].)

■ Appellants' fourth cause of action alleges that the decision of the regional commission resulted in an unconstitutional taking of appellants' contract and real property rights for which they are entitled to damages. However, *Agins* v. *City of Tiburon, supra,* 24 Cal.3d at pages 269-270 precludes such an action. In that case, the Supreme Court was faced with the question whether inverse condemnation was available as a remedy where the public agency adopted a zoning ordinance substantially limiting the use of a landowner's property. The court concluded: "although a landowner so aggrieved may challenge both the constitutionality of the ordinance and the manner in which it is applied to his property by seeking to establish the invalidity of the ordinance either through the remedy of declaratory relief or mandamus, he may not recover damages on the theory of inverse condemnation." The court pointed out that the argument that a local entity's exercise of its police powers exceeded constitutional limits is not equivalent to inverse condemnation. The preferable view is that "while such governmental action is invalid because of its excess, remedy by way of damages and eminent domain is not thereby made available." (*Id.,* at p. 272.)

Also, it is settled law that land use controls like the denial of appellants' permit do not constitute compensable takings when they merely decrease the market value of the property. (See *Friedman* v. *City of Fairfax* (1978) 81 Cal.App.3d 667, 675 [146 Cal.Rptr. 687] and cases cited therein.) So

appellants could not have prevailed on their fourth cause of action as a matter of law and their sole and proper remedy was through administrative mandamus.

The trial court correctly sustained the demurrer to the fourth cause of action.

The judgment is affirmed.

Zenovich, J., and Hanson (P. D.), J., concurred.