[No. A046232. First Dist., Div. Five. July 6, 1990.]

CALIFORNIANS FOR NATIVE SALMON AND STEELHEAD ASSOCIATION et al., Plaintiffs and Appellants, v. DEPARTMENT OF FORESTRY et al., Defendants and Appellants.

**COUNSEL**

Remy & Thomas, Sharon E. Duggan, Cotchett & Illston and Joseph W. Cotchett for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, R. H. Connett, Assistant Attorney General, and Bruce S. Klafter, Deputy Attorney General, for Defendants and Respondents.

OPINION

HANING, J.—This case raises the issue of whether an action for declaratory relief may lie against an administrative agency when it is alleged that the agency has a policy of ignoring or violating applicable laws and regulations, but when no specific agency decision is attacked. Californians for Native Salmon and Steelhead Association, an unincorporated association, Environmental Protection and Information Center, a nonprofit corporation, and Fred "Coyote" Downey, a Native American of the Wailaki People, appeal from a judgment of dismissal entered upon an order sustaining the demurrer of respondents California Department of Forestry et al., to their complaint for declaratory relief. The trial court concluded that declaratory relief was inappropriate because there was no justiciable controversy between appellants and respondents. We disagree and reverse.

FACTS AND PROCEDURAL BACKGROUND

This is essentially a civil procedure case but must be viewed against the backdrop of forestry law. Under the Z'berg-Nejedly Forest Practice Act of 1973 and its implementing regulations, known as the Forestry Rules (Pub. Resources Code, § 4511 et seq.; Cal. Code Regs., tit. 14, § 895 et seq.), "a specific logging operation on privately owned timberlands cannot begin without the logger's preparation and submission of a timber harvest plan," or THP, "which must be approved" by respondent California Department of Forestry (CDF). (*Environmental Protection Information Center, Inc.* v. *Johnson* (1985) 170 Cal.App.3d 604, 609 [216 Cal.Rptr. 502] [hereafter *EPIC*].)

The THP preparation and approval process is the functional equivalent of the preparation of the environmental impact report (EIR) contemplated by the California Environmental Quality Act (CEQA), Public Resources Code section 21000 et seq. (Pub. Resources Code, § 21080.5; *EPIC, supra,* 170 Cal.App.3d at p. 611.) ▪▪▪ This court held in *EPIC* that, with the exception of certain specific provisions of CEQA relating to the "procedural elements" of the EIR process, "CEQA and its substantive criteria for the evaluation of a proposed project's environmental impact apply to the timber harvesting industry, and are deemed part of the [Forest Practice Act] and the Forestry Rules." (*EPIC, supra,* at pp. 617, 620.)

These substantive provisions include strict compliance with provisions for public notice, including the requirement of timely and sufficient responses to public questions and comments. (*EPIC, supra,* 170 Cal.App.3d at pp. 621-624; *Gallegos* v. *State Bd. of Forestry* (1978) 76 Cal.App.3d 945, 954

[142 Cal.Rptr. 86]; *Society for California Archaeology* v. *County of Butte* (1977) 65 Cal.App.3d 832, 839-840 [135 Cal.Rptr. 679].) "The public's interest in the forest resources and timberlands of this state has been described as 'fundamental.' [Citations.]" (*EPIC, supra,* at p. 623, quoting *Gallegos* v. *State Bd. of Forestry, supra,* at p. 950.) The notice provisions are "key regulation[s] preserving the public's right to challenge a plan approval" and must be strictly complied with. (*Ibid.*)

*EPIC* also clearly mandated that the substantive CEQA requirement of assessing cumulative environmental impact must be included in the evaluation of each THP by CDF. (*EPIC, supra,* 170 Cal.App.3d at pp. 624-625). "[C]umulative damage [is] a whole greater than the sum of its parts." (*Id.,* at p. 625.) The cumulative impact of past, present and future logging activities is "a substantive criterion for the evaluation of the environmental impact" of a proposed timber harvest. (*Ibid.*)

The present proceeding originated from an attempt by Eel River Sawmills to obtain the necessary approval of respondents for a THP for the Baker Creek area of the Mattole River watershed in Humboldt and Mendocino Counties. On July 29, 1988, Eel River filed THP 1-88-520 HUM/MEN (THP 520) with respondent California Department of Forestry. THP 520 involved the proposed cutting of 76 acres of scattered old-growth Douglas Fir (200 to 250 years old) and of second-growth Douglas Fir (80 to 100 years old). Clearcutting, "a silvicultural method involving the removal of an entire stand of trees in one cut," (*EPIC, supra,* 170 Cal.App.3d at p. 612, fn. 4) was "prescribed as best suited to the timber stand conditions in the proposed THP area."

THP 520 was approved by CDF on October 25, 1988.[1] Appellants challenged the approval by a combined petition for administrative mandate and complaint for injunctive and declaratory relief naming Eel River and respondents as defendants. Appellants not only sought administrative mandate to vacate the plan approval, but also sought declaratory relief, outside the context of the specific THP at issue, concerning CDF's alleged policies

---

[1] CDF approved the THP despite a lengthy statement of nonconcurrence with the plan filed by the California Department of Fish and Game, which stated that "[t]he THP as currently proposed does not have any mitigation measures whatsoever proposed for minimizing significant direct adverse impacts nor significant cumulative adverse impacts on old growth dependent wildlife species due to timber harvesting activities." The Fish and Game statement identified significant adverse impacts to various species of wildlife, including but not limited to the spotted owl. The statement concluded the THP "would result in fragmentation of the remaining old growth habitat in the Mattole River watershed." Appellants argue the Baker Creek site is a "complex forest ecosystem," and that "[a]djacent to this area are intensive projects in salmon habitat restoration, including a salmon incubation and rearing program."

regarding two issues: (1) the time of filing of CDF's responses to public comments on a THP; and (2) the evaluation and mitigation in each THP of the cumulative impact of logging activities.

In early December 1988, while a motion for a preliminary injunction against the plan was pending, Eel River withdrew THP 520. Since its THP was no longer active, Eel River moved for an order dismissing it as a party. Respondents demurred to the complaint, arguing (1) that the challenges to THP 520 were moot and (2) that the broader request for declaratory relief was demurrable for lack of a justiciable controversy and for uncertainty "in that the pleading refers to unspecified timber harvest plans and to an unidentified contention or policy of Respondents."

On January 31, 1989, the court granted Eel River's motion to dismiss and sustained respondents' demurrer with leave to amend, to make more specific allegations regarding CDF's policies.[2] On February 17, 1989, appellants filed a first amended petition and complaint for declaratory and injunctive relief. In a preliminary statement, the amended pleading alleged that "the Respondents have been repeatedly told that they are in violation of the law in the manner in which they approve timber cutting plans. Instead, they have chosen to ignore the law and the mandate of the Court of Appeal in [*EPIC*], in which these very state agencies were *directed* to follow procedures as set forth in the case. . . . This lawsuit challenges the *pattern* and *practice* of the California Department of Forestry in their [*sic*] approval of timber harvest plans, both in their failure to evaluate and respond to comments, and to assess cumulative impacts, as mandated by the California courts. [¶] . . . [¶] Respondents . . . have failed and continue to fail to perform their duty to comply with the law as alleged herein and [to] deny plans which are not in conformance with the law."

Appellants alleged Forestry Rules section 1037.7 (Cal. Code Regs., tit. 14, § 1037.7) requires CDF to provide written responses to significant environmental objections by the public to the THP, and that Forestry Rules section 1037.8 (Cal. Code Regs., tit. 14, § 1037.8) requires that the response be included in the notice of THP approval which must be issued no more than 10 days from the date the plan is approved. (*EPIC, supra,* 170 Cal.App.3d at p. 621.) Notwithstanding this requirement, respondents "in the past have approved and presently approve timber harvest plans in such

---

[2] Eel River is not a party to this appeal. Two other lawsuits, Mattole Watershed Salmon Support Group, et al. v. Eel River Sawmills, et al., Humboldt County Superior Court Action No. 83221, and International Indian Treaty Council, et al. v. Eel River Sawmills, et al., Humboldt County Superior Court Action No. 83393, focused exclusively on the approval of THP 520 and were apparently dismissed voluntarily upon THP 520's withdrawal.

a fashion that when the Respondents determine the plan is in conformance with the rules of the Board, the person submitting the plan is provided with a notice of approval and timber operations thereunder may commence. . . . Respondents provided no notice to the public at this time. [¶] . . . [¶] Respondents have approved countless timber harvest plans without properly issuing the required responses to environmental comments. . . . In several instances, Respondents have even ignored their duty to issue the required response to comments."

Appellants further alleged that in numerous instances appellants and others had challenged THPs and "consistently alleged that CDF has failed to address the cumulative impacts of the proposed harvest along with other past, present and proposed harvests." Notwithstanding the mandate from this court in *EPIC* to consider the cumulative impacts of timber harvesting operations, respondents have failed to analyze cumulative impacts on such aspects of the environment as watersheds, water quality, and riverine and wildlife habitats, as well as "the short term and long term effects of harvesting upon the total ecology, including . . . hydrological, geological and biological characteristics of the forests and their habitat."

Appellants alleged there was an actual and present controversy between appellants and respondents concerning the nature of the duties imposed on respondents by law with regard to response time and cumulative impact. By a fair reading of the complaint, in both cases appellants alleged that they took one view of the mandates of the law but that respondents consistently took the opposite view, i.e., that responses to public comments were not due on the date of the notice of approval and that the respondents had in fact assessed cumulative impacts. Appellants alleged a list of 65 approved THPs as illustrative of respondents' "procedure" to issue responses to public comments tardily or not at all, and of respondents' having "consistently ignored" their duty to assess cumulative impacts.

With regard to both issues appellants argued declaratory relief "is necessary and appropriate . . . in order that [appellants] may ascertain the right to have Respondents act in accordance with CEQA and its Guidelines, particularly as mandated in [*EPIC*]." Appellants alleged irreparable harm to the environment by respondents' alleged failure to abide by the legal requirements of THP approval, and urged the inadequacy of other remedies.

Respondents demurred to the amended complaint, again contending that no actual controversy existed and urging the court to "decline to issue an advisory opinion." On April 7, 1989, the court sustained the demurrer

without leave to amend, indicating declaratory relief did not lie because there was no justiciable controversy in the wake of the withdrawal of THP 520. On May 8, 1989, the court entered a judgment of dismissal. This appeal followed.

## DISCUSSION

■ Appellants contend the trial court abused its discretion by dismissing their action for lack of a justiciable controversy. Code of Civil Procedure section 1060 authorizes a proceeding for declaratory relief: "Any person interested under a deed, will or other written instrument, or under a contract, *or who desires a declaration of his rights or duties with respect to another, . . .* may, *in cases of actual controversy* relating to the legal rights and duties of the respective parties, bring an original action in the superior court . . . for a declaration of his rights and duties . . . ." (Italics added.) ■ Declaratory relief is an equitable remedy (5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 800(c), p. 244) and is "unusual in that it may be brought to determine and declare rights before any actual invasion of those rights has occurred." (5 Witkin, *op. cit. supra*, § 800(e), at p. 244.) "It was a defect of the judicial procedure which developed under the common law that the doors of the courts were invitingly opened to a plaintiff whose legal rights had already been violated, but were rigidly closed upon a party who did not wish to violate the rights of another nor to have his [or her] own rights violated, thus compelling him [or her], where a controversy arose . . . , to . . . wait until the anticipated wrong had been done . . . before an adjudication of their differences could be obtained. Thus was a penalty placed upon the party who wished to act lawfully and in good faith which the statute providing for declaratory relief has gone far to remove." (*Tolle* v. *Struve* (1932) 124 Cal.App. 263, 271.) Witkin refers to the "beneficial effects and remarkable scope" of the action for declaratory relief. (5 Witkin, *op. cit. supra*, § 800(e), at p. 245.)

■ The material factual allegations of appellants' complaint are admitted by respondents' demurrer. (*Perdue* v. *Crocker National Bank* (1985) 38 Cal.3d 913, 922 [216 Cal.Rptr. 345, 702 P.2d 503].) ■ If these facts show the existence of an actual controversy between appellants and respondents, appellants have "stated a legally sufficient complaint" for declaratory relief and it was an abuse of discretion to dismiss the action. (*Zeitlin* v. *Arnebergh* (1963) 59 Cal.2d 901, 908 [31 Cal.Rptr. 800, 383 P.2d 152, 10 A.L.R.3d 707].) "Where, therefore, a case is properly before the trial court, under a complaint which is legally sufficient and sets forth facts and circumstances showing that a declaratory adjudication is entirely appropriate, the trial court may not properly refuse to assume jurisdiction; . . . if it does

enter a dismissal, it will be directed by an appellate tribunal to entertain the action. Declaratory relief must be granted when the facts justifying that course are sufficiently alleged." (*Columbia Pictures Corp.* v. *De Toth* (1945) 26 Cal.2d 753, 762 [161 P.2d 217, 162 A.L.R. 747]; see 5 Witkin, *op. cit. supra*, § 815, at p. 257; *Salsbery* v. *Ritter* (1957) 48 Cal.2d 1, 7.) "Any doubt should be resolved in favor of granting declaratory relief." (*Warren* v. *Kaiser Foundation Health Plan, Inc.* (1975) 47 Cal.App.3d 678, 683 [121 Cal.Rptr. 19].)[3]

■ "The fundamental basis of declaratory relief is the existence of an actual, present controversy over a proper subject." (5 Witkin, *op. cit. supra*, § 811, at p. 254, italics omitted.) ■ Contrary to respondents' contention, appellants have alleged facts sufficient to establish an actual controversy between them and respondents concerning the issues of response time and cumulative impacts. Appellants have alleged a CDF policy to (1) issue responses after the notice of THP approval and (2) to fail to assess cumulative impacts in THPs. Appellants allege that they and respondents dispute whether CDF is engaged in conduct or has established policies in violation of applicable statutes, regulations, and judicial decisions. Clearly the allegations of appellants' complaint sufficiently set forth an actual controversy over significant aspects of respondents' legally mandated duties. ■ Declaratory relief is appropriate to obtain judicial clarification of the parties' rights and obligations under applicable law. (See, e.g., *Hoyt* v. *Board of Civil Service Commrs.* (1942) 21 Cal.2d 399, 400-401, 405 [132 P.2d 804] [controversy between civil service employees and commission over meaning of county charter section providing for "reserve list" of laid-off workers]; *Walker* v. *County of Los Angeles* (1961) 55 Cal.2d 626, 636-637 [12 Cal.Rptr. 671, 361 P.2d 247] [controversy between county employees and board of supervisors over meaning of a section of county charter pertaining to wage levels]; *Zeitlin* v. *Arnebergh, supra,* 59 Cal.2d 901, 905-906 [controversy between bookseller and city attorney over constitutionality of obscenity statute].)

■ Respondents, however, dispute the presence of an actual controversy and maintain that appellants' complaint seeks "an unnecessary and

---

[3] Respondents cite Code of Civil Procedure section 1061, which states that a court "may refuse to exercise the power [of granting declaratory relief] in any case where its declaration or determination is not necessary or proper at the time under all the circumstances." Witkin, citing *Columbia Pictures Corp.* v. *De Toth, supra,* pronounces that the California Supreme Court has made it "abundantly clear" that those few decisions "asserting unlimited discretion" to deny even properly pleaded declaratory relief requests are "sweeping dicta." (5 Witkin, *op. cit. supra*, § 815, at p. 257.) The rule in this state is that stated in *Columbia Pictures, supra.* (*Warren* v. *Kaiser Foundation Health Plan, Inc., supra,* 47 Cal.App.3d at p. 683 [trial court's discretion to deny declaratory relief "may be exercised only when there is a basis in fact for the conclusion that the declaration is not necessary or proper"]; see 5 Witkin, *op. cit. supra*, § 814, at pp. 256-257.)

improper advisory opinion." First, respondents castigate as "[t]he most glaring error" of appellants' position "the assertion that CDF has adopted 'policies' regarding analysis of THPs." In the realm of truth and fact the assertion may indeed be erroneous, but for present purposes the demurrer admits the allegation that those policies exist. In this same vein, respondents argue that "[a]pproval of a THP is plainly a quasi-judicial action and appellants are improperly challenging a *series* of such actions rather than challenging a genuine policy. [Fn. omitted.]" The authority cited for this proposition, *Laupheimer* v. *State of California* (1988) 200 Cal.App.3d 440, 450 [246 Cal.Rptr. 82], is entirely inapposite. Respondents assert that appellants are merely expressing dissatisfaction with a series of 65 THP approvals, and "[t]he lists of THPs appended to the Complaint, no matter how extensive, do not constitute an agency policy from which relief may be sought." Respondents again miss the point that appellants' allegations of the policies are deemed true by their demurrer.

Respondents also rely on *Zetterberg* v. *State Dept. of Public Health* (1974) 43 Cal.App.3d 657 [118 Cal.Rptr. 100]. That case arose after enactment of the Mulford-Carrell Air Resources Act (Health & Saf. Code, § 39000 et seq.), which created the Air Resources Board to serve as primary regulator of air pollution instead of the Department of Public Health. A group of taxpayers sued the Department seeking a judicial declaration that the Act had not divested the Department of its regulatory authority. In affirming a denial of declaratory relief, the *Zetterberg* court held declaratory relief was "inappropriate" because the action sought general declarations of the legislative allocation of powers among two agencies of the executive branch. (*Id.*, at p. 661.) "A citizen's mere dissatisfaction with the performance of either the legislative or executive branches, or disagreement with their policies does not constitute a justiciable controversy." (*Id.*, at p. 662.)

Unlike the taxpayers in *Zetterberg,* appellants are not seeking to challenge a discretionary allocation of power by the Legislature among executive agencies. Appellants are not trying to "alter the course of government merely because [they perceive] it differently from [*sic*] the agency entrusted with the particular set of tasks embraced in a statute." (*Zetterberg* v. *State Dept. of Public Health, supra*, 43 Cal.App.3d at p. 664.) Rather, appellants allege policies impermissibly made in violation of statutory mandates by an administrative agency and concomitant conduct consistent with the policies, but in violation of law.

■ Respondents also contend that an action for declaratory relief does not lie to review an administrative decision. This is true, but not dispositive. Generally, a specific decision or order of an administrative agency can only

be reviewed by a petition for administrative mandamus. (*State of California v. Superior Court* (1974) 12 Cal.3d 237, 249 [115 Cal.Rptr. 497, 524 P.2d 1281]; *Scott v. City of Indian Wells* (1972) 6 Cal.3d 541, 546 [99 Cal.Rptr. 745, 492 P.2d 1137]; *Walter H. Leimert Co. v. California Coastal Com.* (1983) 149 Cal.App.3d 222, 230-231 [196 Cal.Rptr. 739].) Appellants, however, challenge not a specific order or decision, or even a series thereof, but an overarching, quasi-legislative policy set by an administrative agency. Such a policy is subject to review in an action for declaratory relief. (*Bess v. Park* (1955) 132 Cal.App.2d 49, 52-54 [281 P.2d 556].) In *Bess* the state Labor Commissioner had adopted a policy of refusing to hear certain controversies he was obliged to hear by statute until a certain period of time had elapsed. The trial court granted declaratory relief against the policy and the Commissioner appealed. The *Bess* court affirmed, indicating declaratory relief was available to "any interested person" to review "any rule, regulation, order or *standard* of general application adopted by any state agency to implement, interpret or make specific, any law enforced or administered by it . . . ." (*Id.,* at p. 53, italics added; cf. *Von Durjais v. Board of Trustees* (1978) 83 Cal.App.3d 681, 687 [148 Cal.Rptr. 192] [declaratory relief is proper to seek interpretation of statutes governing administrative agency, as opposed to review of specific agency decision].)

Respondents suggest that declaratory relief regarding administrative agencies would unduly thrust the courts into the workings of such agencies and improperly control administrative discretion. (See *Monahan v. Dept. of Water & Power* (1941) 48 Cal.App.2d 746, 753 [120 P.2d 730].) Respondents again confuse review of specific, discretionary administrative decisions with review of a generalized agency policy. Declaratory relief directed to *policies* of administrative agencies is not an unwarranted control of discretionary, specific agency decisions. As the *Bess* court wisely observed, "If the case before us were one in which there was any doubt, and the Labor Commissioner had exercised his discretion and determined upon an award one way or the other in the pending controversy, there would be no authority for judicial interference with such determination, but when he refused to act at all under a misconception of the duty imposed upon him by law, the courts will correct the error." (*Bess v. Park, supra,* 132 Cal.App.2d at p. 55.)

■ Respondents also contend that "declaratory relief alone *cannot* be sought where an alternative remedy exists." Respondents are mistaken. Declaratory relief is a cumulative remedy (Code Civ. Proc., § 1062), and a proper complaint for declaratory relief cannot be dismissed by the trial court because the plaintiff could have filed another form of action. (*Zeitlin*

v. *Arnebergh, supra*, 59 Cal.2d at p. 908; 5 Witkin, *op. cit. supra*, § 800(d), at p. 244.)[4]

Appellants also contend declaratory relief is proper because the issues at stake are matters of great public interest. There seems some disagreement, however, whether general public interest is sufficient, standing alone, to enable declaratory relief. *Zetterberg* suggests it is not. (*Zetterberg v. State Dept. of Public Health, supra*, 43 Cal.App.3d at p. 662.) The California Supreme Court, however, has noted that "considerations beyond the precedents," such as vindication of First Amendment rights, may justify declaratory relief. (*Zeitlin v. Arnebergh, supra*, 59 Cal.2d at p. 906.) Given that appellants are entitled to declaratory relief apart from this issue, the public-interest question need not be considered.

 Appellants also urge that declaratory relief would avoid a multiplicity of actions, i.e., a large number of mandate proceedings challenging specific THP approvals all raising identical or nearly identical questions concerning CDF's policies. There is authority for the use of declaratory relief to avoid multiple actions. (*Warren v. Kaiser Foundation Health Plan, Inc., supra*, 47 Cal.App.3d at p. 684; *California Bank v. Diamond* (1956) 144 Cal.App.2d 387, 390 [301 P.2d 60].) As against the piecemeal review of similar issues by individual THP challenges, the present action appears singularly economical.

The Attorney General admitted at oral argument that the issues raised herein, noncompliance with response time and cumulative impact provisions, would indeed be litigated in a large number of individual THP challenges. The Attorney General argued that such piecemeal litigation was a preferable format. With the availability of declaratory relief to resolve the issues, we cannot agree, especially in this age of overburdened trial courts, that redundant reconsideration in individual settings is preferable. Appellants have alleged policies which impact on each THP approval; they will either meet their burden of proof that respondents engage in policies which violate the statutory or decisional law of this state, or they will not. In either case judicial economy would strongly favor the present suit. Indeed,

---

[4] In support of their quoted contention above, respondents cite *Leahey v. Dept. of Water & Power* (1946) 76 Cal.App.2d 281, 284-285 [173 P.2d 69]. *Leahey* says nothing of the kind. Presumably, respondents intend to argue that administrative mandate has been legislatively determined to stand as the sole method of reviewing THP approvals. (Pub. Resources Code, § 21080.5.) Here again, respondents confuse review of a specific agency decision with a policy. In any case, there is authority for declaratory relief review of specific government CEQA decisions made, as is a THP approval, without a public-hearing. (*Lightweight Processing Co. v. County of Ventura* (1982) 133 Cal.App.3d 1042, 1049 [184 Cal.Rptr. 479].)

piecemeal litigation of the issues in scores of individual proceedings would be an immense waste of time and resources.

## CONCLUSION

Since we conclude that a justiciable controversy exists, the judgment is reversed with directions to vacate the order sustaining the demurrer and to enter a new order overruling it.[5]

Low, P. J., and King, J., concurred.

The petition of defendants and appellants for review by the Supreme Court was denied September 19, 1990.

---

[5] Respondents' final contention is that the complaint is both time barred and fatally uncertain. As the foregoing discussion indicates, there is no uncertainty to the pleading. The complaint is not time barred because Public Resources Code section 21080.5, subdivision (g)'s 30-day statute of limitations for challenges to THP approvals applies to specific approval decisions, not a general challenge to an ongoing, existing policy.