Filed 9/28/15  Kretowicz v. Cal. Coastal Commission CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DIANNE KRETOWICZ, as Trustee, etc. et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CALIFORNIA COASTAL COMMISSION, <br><br> Defendant and Respondent. | D066072 <br><br><br> (Super. Ct. No. 37-2011-00097607-CU-MC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Judith F. Hayes, Judge.  Affirmed.

Gaines & Stacey and Sherman Louis Stacey, Nanci S. Stacey for Plaintiffs and Appellants.

Kamala D. Harris, Attorney General, John A. Saurenman, Assistant Attorney General, Jamee Jordan Patterson, Deputy Attorney General for Defendant and Respondent.

James S. Burling and Christopher M. Kieser for Amicus Curiae Pacific Legal Foundation.

Appellants Dianne Kretowicz and Ure Kretowicz, as trustees of the DUK Trust dated September 9, 1994 (hereafter the Kretowiczes) filed a verified petition for writ of mandate and complaint against respondent California Coastal Commission (Commission) in part challenging Commission's decisions to require the Kretowiczes to irrevocably dedicate public access easements as a condition of their requested amended coastal development permit for improvements on their La Jolla property.  Commission found in part that there was a history of public access at the site warranting Commission protection, and that the Kretowiczes' predecessor had accepted the benefits of a permit in which it had imposed such a condition on the basis of such historic use, precluding the Kretowiczes' challenge.  The trial court denied the Kretowiczes' petition, as well as their request for declaratory relief, and dismissed a cause of action seeking quiet title against Commission.

The Kretowiczes appeal from the ensuing judgment in Commission's favor, contending the trial court reversibly erred by denying their petition and entering judgment because (1) it did not provide them with notice or trial on their declaratory relief and quiet title causes of action; (2) Commission's findings are inadequate, unsupported by the evidence, and beyond its jurisdiction; (3) the court relied on inapposite case authority; and (4) substantial evidence does not support the court's conclusion that the Kretowiczes' predecessor in interest accepted Commission's public access condition.

We conclude Commission's findings are supported by substantial evidence, and that the Kretowiczes' predecessor's failure to timely appeal Commission's decision to

grant her permit on condition she record an irrevocable offer to dedicate public access easements bars the Kretowiczes' challenges, including their claim that Commission's action constitutes an unconstitutional taking. We reject the Kretowiczes' remaining contentions, and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

The Kretowiczes own a single family home on Princess Street in La Jolla (the property), on a lot extending to the shore of the Pacific Ocean, with approximately 190 feet of ocean frontage. In 1978, the property was owned by Jane Baker. In March 1978, Baker applied to the San Diego Coast Regional Commission (the Regional Commission)[1] for a coastal development permit to construct a large addition to the then existing house. In June 1978, the Regional Commission approved the permit, designated No. F6760, subject to special conditions relating to geology, slope integrity and drainage. Permit No. F6760 states that its "terms and conditions shall be perpetual, and it is the intention of the parties to bind all future owners and possessors of the subject property to said terms and conditions."

Legal challenges ensued, including appeals (designated Nos. 221-78 and 133-79) from decisions of the Regional and State Commissions as well as a superior court petition for writ of mandate. In the writ petition, the appellant asserted that Commission had

---

[1]     Commission is the successor in interest to the Regional Commission. (Pub. Res. Code, § 30331.) Statutory references are to the Public Resources Code unless otherwise specified.

3

failed to make specific public access findings required by the Coastal Act of 1976 (§ 30604). Baker, the real party in interest, participated in those proceedings. Baker completed her proposed construction pending the legal proceedings.

On September 20, 1979, Commission unanimously granted Baker's permit for her proposed development, and imposed new special conditions for lateral and vertical public shoreline access.[2] Commission's supporting findings acknowledged that the Coastal Act required that public access to and along the shoreline be maximized; staff stated in part that adequate access to the beach below the property did not exist nearby and "[a]lthough the public has historically had access over the project site, construction of the project has preceeded [*sic*] the use of this accessway, thereby diminishing the public's right of access to the state owned tidelands. An alternative accessway must, therefore, be provided to offset the burdens this development has placed on [the] public's constitutional right of access and to assure the conformity of the project to the provisions of [section 30212] of the [Coastal] Act."[3] Commission also made findings about the historical public access to

---

[2]    Vertical access is roughly perpendicular to the shoreline. Lateral access allows members of the public to walk along portions of the shoreline. (See *City of Malibu v. California Coastal Com.* (2005) 128 Cal.App.4th 897, 899.)

[3]    The Kretowiczes do not challenge the sufficiency of the evidence of Commission's finding of historic public access, and the record contains ample evidence of longtime access by the public prior to 1979. Section 30212, subdivision (a) provides in part: "Public access from the nearest public roadway to the shoreline and along the coast shall be provided in new development projects except where (1) it is inconsistent with public safety, military security needs, or the protection of fragile coastal resources, (2) adequate access exists nearby, or (3) agriculture would be adversely affected."

4

the beach in response to Baker's position, stating: "The applicant contends that, because of the steepness of the bluff, the accessway would not be safe and therefore need not be provided . . . . This site has historically been used for access to the shoreline below. A site inspection revealed that it was not difficult to walk down the bluff face and, if minor improvements were made, the access way could be easily traversed with little damage to the landforms. The Commission concludes that public access can be provided consistent with public safety and must, therefore, be provided to find the proposed project consistent with the Coastal Act." The special permit condition required Baker to submit for approval, prior to the permit's issuance, "a document irrevocably offering to dedicate to a public agency or private association approved by the Executive Director easements for public access to and along the shoreline in accordance with the provisions of this condition." Commission's decision required that the document "shall be irrevocable for a period of 21 years running from the date of recordation" and "shall constitute a covenant running with the land in favor of the People of the State of California binding the applicant, heirs, assigns and successors in interest to the subject property."

Days after Commission heard the matter, a representative for the appellant in the legal proceedings wrote to Commission's legal department to inform it that Baker was contemplating not making the offer of dedication; that Baker might take the position that she had built her construction under a valid permit. Several months later, the appellant's representative noted in a letter to the attorney general that Commission had voted to find

5

Baker in violation and had referred the matter to the attorney general for enforcement. The representative asked the attorney general to penalize Baker for her violation of the dedication condition.

Baker did not submit an irrevocable offer to dedicate the easement. In 1980, she sought to amend permit No. F6760 to approve already completed drainage that differed from the prior permit condition. She eventually sold the property. In an April 1989 handwritten "statement of understanding" to the buyer signed by Baker, Baker's son who was also her sales representative wrote: "Jane Baker has agreed to California Coastal Commission stipulations, File #A-133-791/F6760, dated Sept. 20, 1979. These provisions state generally the requirements for drainage and easement conditions. It is understood that any purchase by you would require acknowledgment of these declarations, including the future recording of emergency or public access to the beach."[4]

---

[4] According to the Kretowiczes, Commission did not make any findings relating to this document. They suggest, and Amicus Pacific Legal Foundation asserts, that this document is a forgery based on declarations the Kretowiczes produced in support of their motion for new trial. But Commission did find Baker had accepted the permit's benefits, as did the trial court. In assessing whether Commission's findings are supported by substantial evidence and the findings support its decision, any reasonable doubts must be resolved in favor of Commission, which is the sole arbiter of the evidence and judge of credibility. (See *Paoli v. California Coastal Com.* (1986) 178 Cal.App.3d 544, 550; *Pescosolido v. Smith* (1983) 142 Cal.App.3d 964, 970-971.) The Kretowiczes have not shown the statement of understanding is so suspect that we should reject Commission's decision as unreasonable. (See *Reddell v. California Coastal Com.* (2009) 180 Cal.App.4th 956, 962 [" ' "Courts may reverse an agency's decision only if, based on the evidence before the agency, a reasonable person could not reach the conclusion reached by the agency," ' " italics omitted].)

6

Thereafter, the property became bank-owned through foreclosure.  In early 1994, the Kretowiczes purchased the property from Union Bank.  At that time, the La Jolla-La Jolla Shores Local Coastal Program Addendum (La Jolla LCP) identified shoreline access at Princess Street, stating in part:  "As a condition of a permit to build a single-family house, the State Coastal Commission required the owner of the bluff top lot to dedicate a 4-foot wide vertical easement along one side of the property from the Princess Street cul-de-sac to the shoreline.  The owner has challenged the validity of the condition and no offer of dedication has been made.  The State Attorney General has apparently decided not to pursue an enforcement of the condition, although the possibility of future litigation remains.  The site represents one of two potential routes to a remote section of shoreline accessible only during low tides."

*The Kretowiczes File for a Coastal Development Permit Following the City of San Diego's Discovery of Unauthorized Improvements*

In 1997, the Kretowiczes applied for a coastal development permit after a code enforcement complaint reported numerous unpermitted landscape and hardscape improvements.  Though the City of San Diego eventually issued the permit,[5] that decision was appealed to Commission on grounds it was inconsistent with permit No. F6760's public access requirements and the Kretowiczes withdrew the application.  As

___

5    The City of San Diego had recommended the planning commission approve the permit, acknowledging Commission's 1979 requirement of a public access easement, but the City recommended dedication of an easement for limited use such as for educational activities and lifeguard rescue.

early as 2001, the Kretowiczes went ahead with numerous unpermitted improvements, for which they were assessed civil penalties in December 2007.

*Commission Denies The Kretowiczes' Request for Relief from the 1979 Public Access Dedication Requirements, finding the Conditions Valid as Against Them*

In July 2004, the Kretowiczes applied for a new coastal development permit. After Commission advised them their proposed work required an amendment to permit No. F6760, in August 2004 they filed an application to amend permit Nos. F6760 and F6760A, eventually denominated by Commission as No. A-133-79-A1/F6760A2, to authorize certain improvements and offering to provide lifeguard rescue access to the beach below. In a May 2005 report, Commission staff observed: "It was routine practice at the time for the State Commission to assign a different permit number when a Regional Commission permit was appealed to it. The permit would then be issued with the State Commission number, not the Regional Commission number. Here, however, the Regional Commission permit had been issued during the litigation/appeal and therefore, the permit as initially issued had the F6760 number of the Regional Commission. Thus, the permit is identified by two numbers. It should be noted that the conditions of approval of F6760 all addressed what construction was approved or how the construction should occur, and are not the type of conditions that continue to apply indefinitely. Thus, since the addition was already completed when the State Commission acted on the appeal, the conditions of F6760 had already been met. Therefore, it was appropriate for the State Commission to simply impose the additional condition that was necessary for

8

public access, rather than reissue the permit with all the conditions. To avoid any confusion, and for the sake of completeness, the permit for the addition is identified as CDP A-133-79-F6760." Staff disagreed with the Kretowiczes' position that permit No. A-133-79 had expired, stating: "The State Commission permit, A-133-79, which was an appeal of F6760, was effectively issued at the time it was approved because the development had already commenced. Because the permit that was on appeal had already been issued by the Regional Commission and the addition was already completed, the wording of the condition for public access imposed by the State Commission in A-133-79 indicating that the condition had to be satisfied 'prior to issuance of the permit' was an oversight or poor choice of words." Commission staff found "CDP A-133-79 is valid and that the condition of approval continues to apply to the applicant's property."

Commission approved the permit amendment for certain of the improvements but denied the Kretowiczes' request to modify the 1979 public access condition. It found the Kretowiczes were bound by the 1979 public access condition because by completing her construction under coastal development permit No. F6760, Baker had accepted the benefits of the permit; removal of the public access condition would be inconsistent with requirements of the Coastal Act (§§ 30210-30212); and there was substantial evidence of public prescriptive rights or an implied dedication of a public easement, obligating Commission to ensure development did not interfere with such historical use.

9

The Kretowiczes filed a legal challenge and Commission cross-complained, but in 2007 and 2008 they entered into settlement agreements that in part would have postponed any public access easement for specified periods of time, including 15 years after the death of both Kretowiczes. The Kretowiczes applied for permit amendments to reflect the settlement agreements' terms. Though Commission staff initially recommended that Commission approve the permit on those conditions, the Commissioners rejected the permit amendment's terms in the face of heavy public opposition. Ultimately, in July 2011, Commission approved the Kretowiczes' requested permit amendment subject to special public access condition Nos. 2 and 3, requiring them to execute and record irrevocable offers to dedicate lateral and vertical public access easements. In revised findings, Commission stated that in 1979 it found substantial evidence of historic public use requiring the need for Baker to record an irrevocable offer of dedication and that though years had passed, those facts remained the same. It found Ure Kretowicz was a sophisticated developer who knew about development permit requirements, and had he checked with Commission's district office, he would have learned of the permit history and its public access requirements. Commission found the requirement for an irrevocable offer of dedication was "still valid today."

*The Present Action Challenging Commission's 2005 and 2011 Decisions*

The Kretowiczes petitioned for a writ of mandate, and in February 2012, filed a first amended petition challenging Commission's 2005 and 2011 actions and asserting, among others, causes of action for declaratory relief, quiet title, unconstitutional taking, injunctive relief and violation of their civil rights. Commission successfully demurred to

10

the injunctive relief and civil rights causes of action, and thereafter the court bifurcated the writ of mandate issues from the declaratory relief and quiet title claims. In part, its order states that the writ of mandate issues will be heard separately from the third and fourth causes of action for declaratory relief and quiet title, and "[t]he Court will set a further trial date on the declaratory relief and the quiet title causes, if necessary, after the ruling on the writ of mandate."

After examining the administrative record as well as the pleadings and documents in the petition, and hearing the parties' arguments, the trial court issued a statement of decision denying the Kretowiczes' writ of mandate causes of action. It ruled Commission's decisions were supported by substantial evidence of historic public use; that the public access condition ran with the land and Baker's failure to record the dedication did not extinguish the public's right to access, but was irrelevant because Ure Kretowicz, a prominent real estate developer, would have learned of the permit conditions had he gone to Commission's office. It further found Baker had knowledge of the permit condition but never challenged it, rendering it free from collateral attack. The court ruled estoppel, laches, and waiver did not apply to the public access condition. The court dismissed the Kretowiczes' quiet title cause of action, ruling Commission had no claim to any property interest in the Kretowiczes' property and they could not maintain such a cause of action. As to the Kretowiczes' request for declaratory relief, the court denied it on grounds the statute of limitations did not preclude Commission from enforcing the public access condition because (1) passage of time would not legalize ongoing violations of such conditions and (2) Code of Civil Procedure section 315 did

11

not apply to the property, which was deemed for public use under the public access condition.

The Kretowiczes unsuccessfully moved for a new trial, and thereafter filed this appeal.

DISCUSSION

I. *Judgment on Declaratory Relief and Quiet Title Causes of Action*

The Kretowiczes contend the court reversibly erred by entering judgment on their declaratory relief and quiet title causes of action without notice or trial, after having bifurcated the writ of mandate claims. They argue that under Code of Civil Procedure section 594 they were entitled to notice that those claims were to be tried, but the court only gave notice that the writ of mandate causes of action were to be tried. According to the Kretowiczes, entry of judgment without the sending of that notice is reversible error under *Urethane Foam Experts, Inc. v. Latimer* (1995) 31 Cal.App.4th 763, 767.

The contention is without merit. Code of Civil Procedure section 594 states in part: "In superior courts either party may bring an issue to trial or to a hearing, and, in the absence of the adverse party, unless the court, for good cause, otherwise directs, may proceed with the case and take a dismissal of the action, or a verdict, or judgment, as the case may require; provided, however, if the issue to be tried is an issue of fact, proof shall first be made to the satisfaction of the court that the adverse party has had 15 days' notice of such trial . . . ." The purpose of this provision is to prevent the possibility of proceedings taken against a party *in his absence* where that person has, by reason of

12

insufficient notice or no notice of the time of trial, been unable to appear. (*Au-Yang v. Barton* (1999) 21 Cal.4th 958, 962-963.)  Compliance with the statute is mandatory in that a court may not shorten the time for notice or fail to give notice and then proceed in a party's absence. (*Id*. at p. 963.)  Thus, in *Urethane Foam Experts, Inc.*, the appellate court reversed a judgment entered after a trial at which the defendant did not appear because notice was improperly sent. (*Urethane Foam Experts, Inc.*, *supra*, 31 Cal.App.4th at p. 767.)  Because in this case there was no issue of the trial court proceeding with a trial *in the Kretowiczes' absence*, they have shown no violation of that statute or reversible error stemming from any purported lack of notice.

The Kretowiczes next contend they were entitled to a trial of facts that were at issue in their causes of action, and that the trial court's judgment deprived them of the right to present and admit evidence and the right to examine and cross-examine witnesses.  They maintain they were entitled to a civil trial to prove with sworn testimony that Commission was subject to estoppel, waiver and laches, and the court had no authority to enter judgment against them without such a trial.  As Commission correctly points out, however, declaratory relief is not appropriate to review an administrative decision. (*State of California v. Superior Court* (1974) 12 Cal.3d 237, 249 ["It is settled that an action for declaratory relief is not appropriate to review an administrative decision"]; see also *City of Pasadena v. Cohen* (2014) 228 Cal.App.4th 1461, 1466-1467; *San Mateo County Coastal Landowners' Assn. v. County of San Mateo* (1995) 38 Cal.App.4th 523, 558; *Walter H. Leimert Co. v. California Coastal Com.* (1983) 149 Cal.App.3d 222, 230-231; compare *Pacific Legal Foundation v. California Coastal Com.*

13

(1982) 33 Cal.3d 158, 168-169 [quasi-legislative actions of administrative agencies, such as Commission's adoption of guidelines in interpreting the Coastal Act's access policies, are reviewable by declaratory relief or traditional mandamus].)

Finally, the Kretowiczes contend that because the 1979 easement requirements are a claim or "cloud" on their title, they were entitled to a trial on their claim for quiet title. Concededly, a claim for purposes of an action for quiet title is "intended in its broadest possible sense" and includes a cloud upon title. (Cal. Law Revision Com. com., 17A West's Ann. Code Civ. Proc. (2015 supp.) foll. § 760.010, p. 84.) "[A] quiet title action requires 'antagonistic property interest[s].' [Citation.] In other words, a plaintiff cannot obtain a quiet title judgment unless someone claims a conflicting interest in the same property as the plaintiff." (*Harbour Vista, LLC v. HSBC Mortg. Services Inc.* (2011) 201 Cal.App.4th 1496, 1511.) This requires that the plaintiff prove a title in himself superior to that of the defendant. (*Harbour Vista, LLC*, at p. 1511.)

In their cause of action for quiet title, the Kretowiczes alleged Commission claimed an "interest adverse to [them] in the Property in that the Commission claims that there is an obligation to record an offer of dedication for public access that runs with the Property and that [they] took its interest in the Property subject to said obligation." (Some capitalization omitted.) The Kretowiczes alleged its interest was not subject to the condition or to "Unissued Permit A-133-79," and sought as of August 5, 2005, to "quiet title against any claim of the Commission as set forth above." (Some capitalization omitted.) The Kretowiczes' quiet title cause of action sought to litigate not a title issue,

14

but Commission's imposition of the 1979 public access condition on their sought-after development permit, and thus was in substance and effect a challenge to Commission's decision, which, as stated, must be tested via a writ of mandate. Upon determining the Kretowiczes had no viable challenge via mandate to Commission's decision, a decision we uphold, the trial court did not err in dismissing their quiet title cause of action.

## II. *Denial of Petition for Writ of Mandate*

A. *Appellate Standard of Review*

Section 1094.5 of the Code of Civil Procedure sets out the procedure for judicial review of final administrative determinations by petitions for writ of mandate. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 810.) We review Commission's decision for an abuse of discretion. (Code Civ. Proc., § 1094.5, subd. (b).) An abuse of discretion is established if Commission has not proceeded in a manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence. (*Ibid.*) Code of Civil Procedure section 1094.5, subdivision (c) provides: "Where it is claimed that the findings [of an administrative body] are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence. In all other cases, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record." Under this subdivision "[t]here are two tests for judicial review of the evidentiary basis for the agency's decision. The

'independent judgment' rule applies when the decision of an administrative agency will substantially affect a fundamental vested right.  The trial court must not only examine the administrative record for errors of law, but must also exercise its independent judgment upon the evidence disclosed in a limited trial de novo.  [Citation.]  The 'substantial evidence' rule applies when the administrative decision neither involves nor substantially affects a vested right.  The trial court must then review the entire administrative record to determine whether the findings are supported by substantial evidence and whether the agency committed any errors of law, but need not look beyond the record of the administrative proceedings." (*Mann v. Department of Motor Vehicles* (1999) 76 Cal.App.4th 312, 320, citing *Bixby v. Pierno* (1971) 4 Cal.3d 130, 143, 144.)  " 'In reviewing the agency's decision, the trial court examines the whole record and considers all relevant evidence, including evidence that detracts from the decision.'  [Citation.] Substantial evidence means evidence 'of ponderable legal significance.'  [Citation.]  The evidence ' " ' "must be reasonable in nature, credible, and of solid value . . . ." ' " ' " (*Schafer v. City of Los Angeles* (2015) 237 Cal.App.4th 1250, 1260.)

The trial court reviews questions of law differently: it " 'exercises independent judgment on pure questions of law, including the interpretation of . . . judicial precedent.' " (*Schafer v. City of Los Angeles*, *supra*, 237 Cal.App.4th at p. 1261, quoting *McAllister v. California Coastal Com.* (2008) 169 Cal.App.4th 912, 921-922.)

An appellate court's review of the administrative record for legal error and substantial evidence in a mandamus case is the same as the trial court's: this court reviews

16

the agency's action, not the trial court's decision. (*Vineyard Area Citizens for Responsible Growth, Inc. v. City of Rancho Cordova* (2007) 40 Cal.4th 412, 427; *Ross v. California Coastal Com.* (2011) 199 Cal.App.4th 900, 922.) We examine all relevant materials in the entire administrative record to determine whether the agency's decision is supported by substantial evidence. (*Ross*, at p. 922; *McAllister v. California Coastal Com.*, *supra*, 169 Cal.App.4th at p. 921.) " 'Although this task involves some weighing to fairly estimate the worth of the evidence, that limited weighing does not constitute independent review where the court substitutes its own findings and inferences for that of the Commission. Rather, it is for the [agency] to weigh the preponderance of conflicting evidence, as [the court] may reverse its decision only if, based on the evidence before it, a reasonable person could not have reached the conclusion reached by it.' " (*McAllister*, at p. 921, quoting *Kirkorwoicz v. California Coastal Com.* (2000) 83 Cal.App.4th 980, 986.)

This court presumes Commission's findings and actions are supported by substantial evidence; it is the Kretowiczes' burden to demonstrate to the contrary. (*Ross v. California Coastal Com.*, *supra*, 199 Cal.App.4th at p. 921; *McAllister v. California Coastal Com.*, *supra*, 169 Cal.App.4th at p. 921.)

B. *The Trial Court Did Not Err by Reviewing Commission's Decision for Substantial Evidence*

As a threshold argument, the Kretowiczes contend the trial court erred by not applying its independent judgment on Commission's decision; they suggest Commission's

action amounts to a "confiscation" and they have a fundamental right to be free from a physical taking of their private property. We conclude these arguments are misplaced, and the trial court applied the correct review standard for Commission's decision.

This court has explained that "[a] fundamental vested right has been termed a right 'already possessed' [citation] or 'legitimately acquired' [citation]. ' "[A] vested right for review purposes means a preexisting right while a vested right for construction means a right the government is estopped to deny." ' " (*Barrie v. California Coastal Com.* (1987) 196 Cal.App.3d 8, 14-15.) The same test determines whether a right is vested or fundamental. (*Id.* at p. 15.) "The term 'vested' in the sense of 'fundamental vested rights' in an administrative mandate proceeding is not synonymous with the 'vested rights' doctrine relating to land use development. [Citation.] Courts rarely uphold the application of the independent judgment test to land use decisions. [Citation.] Cases upholding such application typically involve 'classic vested rights'—i.e., a vested right to develop property in a particular way." (*Amerco Real Estate Company v. City of West Sacramento* (2014) 224 Cal.App.4th 778, 783, citing *Goat Hill Tavern v. City of Costa Mesa* (1992) 6 Cal.App.4th 1519, 1527.)

In circumstances involving development permits, "an owner of property acquires a vested right to construct a building where the conduct of the government amounts to a representation that such construction is fully approved and legal, and in reliance on such representation the owner materially changes position." (*Stanson v. San Diego Coast Regional Com.* (1980) 101 Cal.App.3d 38, 49.) Thus, in *Stanson*, an agent of the regional

18

commission told the plaintiff he did not need a coastal development permit to remodel his restaurant, and he obtained building permits and expended substantial amounts of money remodeling. (*Stanson*, at p. 42.) The regional commission thereafter advised him he in fact required a permit, and denied his permit request, which the state Commission affirmed. (*Id*. at p. 43.) This court concluded under these circumstances that his asserted right was vested and fundamental, and that the trial court should have reviewed the Commission's decision under the independent judgment review standard. (*Id*. at pp. 49-50.)

In *Barrie v. California Coastal Com.*, *supra*, 196 Cal.App.3d 8, this court rejected homeowners' claim they possessed a fundamental vested right for purposes of trial court review where Commission had issued them a temporary permit to build a protective seawall, but later required them to remove and relocate the seawall. (*Id*. at pp. 12-15.) The homeowners could not establish a vested right to continue the seawall as a matter of law, in part because their claim did not rest on an affirmative misrepresentation by Commission that approval would be perfunctory, and strong public policy militated against granting individuals vested rights to permanent structures based on temporary permits. (*Id*. at p. 16-17.)

The Kretowiczes assert that our decision in *Barrie* is incorrect in that it did not "critically examine[]" which test applied to a Commission decision involving a seawall's placement. We read the case differently, and observe it thoroughly and correctly examined the rights and issues at hand. The inquiry here is whether the Kretowiczes

19

have a vested or fundamental right to an unconditional coastal development permit for their desired improvements by reason of Commission's representation that such construction was approved and legal. (See *Stanson v. San Diego Coast Regional Com.*, *supra*, 101 Cal.App.3d at p. 49.) They have not established any such representation by Commission concerning their proposed development, and thus we conclude they did not have a right to a permit that was either already possessed or legitimately acquired so as to require the trial court to exercise its independent judgment on Commission's decision.

C. *Commission's Finding that Baker Accepted the Public Access Conditions in Permit No. F6760 is Supported by Substantial Evidence, and the Conditions are Enforceable Against the Kretowiczes as a Matter of Law*

The Kretowiczes advance several challenges to the trial court's decision denying their petition for a writ of mandate. They contend the court erred by denying their petition because Commission failed to make findings that their proposed property improvements had a nexus or rough proportionality to the public access conditions under *Nollan v. California Coastal Com.* (1987) 483 U.S. 825 or *Dolan v. City of Tigard* (1991) 512 U.S. 374 (*Nollan/Dolan*). They contend Commission's finding of an implied dedication, and the trial court's finding that the 1979 easement requirements had priority

20

over their title, lack substantial evidence in the record.[6] They maintain the court erred by applying what they term "collateral estoppel" to the 1979 public access conditions because (a) application of such a doctrine does not comport with fairness or sound public policy; (b) Commission's right to assert the doctrine was waived, estopped, and barred by laches or the statute of limitations; and (c) Commission acted beyond its subject matter jurisdiction in finding the existence of an implied dedication.

As we explain, the Kretowiczes are precluded from raising their *Nollan/Dolan* challenge, or their challenge to Commission's finding of historic public use supporting an implied dedication,[7] because their predecessor in title, Baker, elected not to appeal Commission's September 20, 1979 findings and decision to impose the public access conditions on permit No. F6760 and any such claims are barred by the 60-day statute of

---

[6]     We reject outright as without pertinent authority the Kretowiczes' arguments concerning the trial court's supposed finding of priority of title, and their obligation to go to Commission's San Diego office to ask about their property. Their arguments are that the finding "was no more than self-serving speculation by the [Commission]"; that Commission "has no authority to judge priorities of instruments under the Civil Code," and Commission "was judging the priority of its own claim." The sole authority relied upon by the Kretowiczes (*El-Attar v. Hollywood Presbyterian Med. Ctr.* (2013) 56 Cal.4th 976, 995), however, involves a hospital peer review proceeding and is cited for the collateral proposition that "[a] fair hearing requires an impartial adjudicator." The Kretowiczes do not articulate any argument under a separate heading that Commission denied them a fair hearing. (Cal. Rules of Court, rule 8.204(a)(1)(B).)

[7]     The Kretowiczes' cited authority, *LT-WR, L.L.C. v. California Coastal Com.* (2007) 152 Cal.App.4th 770, does not in any event support its challenge to Commission's fundamental subject matter jurisdiction, which was not implicated by its findings or imposition of the permit conditions. (*California Coastal Com. v. Superior Court* (1989) 210 Cal.App.3d 1488, 1501; see *Mt. Holyoke Homes, LP v. California Coastal Com.* (2008) 167 Cal.App.4th 830, 841 [Commission had subject matter jurisdiction as long as the appeal to it presented a substantial issue].)

21

limitations for such a challenge. Because Baker proceeded with her proposed construction under permit No. F6760 during the appeals to the regional Commission and then the state Commission, after which Commission imposed the public access conditions on permit No. F6760, she assumed the benefits of that permit as well as the risk that Commission might add the challenged dedication conditions. Given Baker's failure to challenge Commission's decision to impose the conditions, we uphold Commission's finding that they are valid and the Kretowiczes are bound by them.

Section 30801 declares that "[a]ny aggrieved person shall have a right to judicial review of *any decision or action* of the commission by filing a petition for a writ of mandate in accordance with Section 1094.5 of the Code of Civil Procedure within 60 days after the decision or action has become final." (Italics added.) "[S]ection 30801's 60-day period constitutes a statute of limitations and generally bars untimely efforts to challenge coastal commission rulings." (*Strother v. California Coastal Com.* (2009) 173 Cal.App.4th 873, 878; see *Ojavan Investors, Inc. v. California Coastal Com.* (1994) 26 Cal.App.4th 516, 525 ["the time to challenge coastal development permits . . . is within the statutory 60–day period after issuance of the permits . . . , not when a party or a successor in interest elects to violate declarations of restrictions imposed pursuant to the permits, and a cease and desist order ensues"].) Commission's September 20, 1979 vote to impose the public access conditions on the improvements for which Baker sought permit No. F6760 was a "decision or action" falling within this category.

22

The law in California is settled that "[a] landowner cannot challenge a condition imposed upon the granting of a permit after acquiescence in the condition by either specifically agreeing to the condition or failing to challenge its validity, and accepting the benefits afforded by the permit." (*Rossco Holdings Inc. v. State of California* (1989) 212 Cal.App.3d 642, 654, citing *County of Imperial* v. *McDougal* (1977) 19 Cal.3d 505, 510-511 ["A number of cases have held that a landowner or his successor in title is barred from challenging a condition imposed upon the granting of a special permit if he has acquiesced therein by either specifically agreeing to the condition or failing to challenge its validity, and accepted the benefits afforded by the permit"]; see also *Bowman v. California Coastal Com.* (2014) 230 Cal.App.4th 1146, 1152; *Salton Bay Marina, Inc. v. Imperial Irrigation Dist.* (1985) 172 Cal.App.3d 914, 941.) If conditions imposed in a permit are invalid, Code of Civil Procedure section 1094.5 provides a landowner the right and procedures to eliminate them, and if the landowner declines to avail himself of those procedures, he cannot convert that right into a cause of action in inverse condemnation. (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 19; *Rossco*, at pp. 654-655; see also *Serra Canyon Co., Ltd. v. California Coastal Com.* (2004) 120 Cal.App.4th 663; *Pfeiffer v. City of La Mesa* (1977) 69 Cal.App.3d 74, 78, modified by statute as stated in *Sterling Park, L.P. v. City of Palo Alto* (2013) 57 Cal.4th 1193, 1200 and *Hensler*, at p. 19, fn. 9.)

These principles are reflected in several cases, some of which the Kretowiczes seek to distinguish as involving recorded instruments or conditions. In *California Coastal Com. v. Superior Court (Ham)* (1989) 210 Cal.App.3d 1488, Commission in

23

1985 approved a coastal development permit on condition the property owner record an offer to dedicate an easement for public access across the strip of beach in front of his home. (*Id*. at p. 1492.) The landowner recorded the offer to dedicate, Commission issued the permit, and the landowner completed the project. (*Ibid*.) Three years later, following the decision in *Nollan*, *supra*, 483 U.S. 825, the landowner sued Commission for inverse condemnation, alleging the permit condition requiring dedication of a public beach access easement amounted to an unconstitutional taking of private property without compensation. (*Id*. at pp. 1492, 1495.) This court issued a writ directing the trial court to sustain Commission's demurrer to the complaint, concluding that the landowner's failure to challenge the permit condition in an administrative mandamus action barred his action for damages. We agreed with the State's position (*id*. at p. 1495) that Ham's challenge was barred by his failure to file a writ petition within the 60-day limitations period from Commission's decision: "Quite clearly, a property owner seeking to recover on an inverse condemnation claim against the Commission in a case such as this must first establish the invalidity of the condition the Commission sought to impose. An administrative mandate proceeding provides the proper vehicle for such a challenge. Even in the post-*First Lutheran* world [*First English Evangelical Lutheran Church v. County of Los Angeles* (1987) 482 U.S. 304], requiring that an inverse condemnation claim be joined with an administrative mandate action filed within 60 days after the Commission decision becomes final serves the salutary purpose of promptly alerting the Commission that its decision is being questioned and that the State may be liable for

24

inverse condemnation damages. We are aware of nothing which would prohibit the Commission, knowing of such a challenge, from temporarily staying enforcement of a challenged condition in order to mitigate the potential damages. Were the rule as Ham proposes, a property owner could delay nearly five years until the statute of limitations for an inverse condemnation action had almost expired, simply allowing his damages to accrue in the interim. In given cases and certainly in the aggregate, the financial burden on the state could be overwhelming." (*Id*. at p. 1496.)

This court further held that as long as an agency has subject matter jurisdiction over the issue before it, its decisions are subject to res judicata even if they turn out to be incorrect. " 'It is an established rule that where a tribunal has jurisdiction of the parties and of the subject-matter it necessarily has the authority and discretion to decide the questions submitted to it even though its determination is erroneous. . . . This rule applies to quasi-judicial tribunals as well as to courts.' [Citations.] Here, the commission quite clearly had subject matter jurisdiction and the authority to impose permit conditions reasonably related to any burdens on the public beach created by the construction of Ham's residence. [Citation.] The fact that it incorrectly analyzed the relationship between the burdens and the condition it sought to impose—or perhaps more accurately, incorrectly anticipated the action of the United States Supreme Court—does not mean it acted in excess of its jurisdiction in the fundamental sense. If he believed the Commission was wrong, Ham had a remedy by way of judicial review. Having failed to avail himself of that recourse, he now has no basis for complaint." (*California Coastal Com. v. Superior Court*, *supra*, 210 Cal.App.3d at p. 1501, fn. omitted.)

25

In *Serra Canyon Co., Ltd. v. California Coastal Com.*, *supra*, 120 Cal.App.4th 663, Commission granted plaintiff's predecessor a permit on condition he record an irrevocable offer of dedication of property for public recreational use. (*Id*. at p. 666.) That condition became final in 1981. (*Id*. at p. 669.) The predecessor did not challenge the condition, but in 1983 executed and recorded it, giving the state fee title to the property. (*Ibid*.) Commission transferred its rights to the dedication to the coastal conservancy, which in 2002 adopted a resolution to accept it and planned to record it. (*Id*. at p. 666.) Before the conservancy did so, the plaintiff, who had purchased the property more than a decade after its predecessor applied for the permit, challenged the offer to dedicate on grounds it was void and an unconstitutional taking. (*Id*. at p. 667.)

Relying on its prior decision in *Ojavan Investors, Inc. v. California Coastal Com.*, *supra*, 26 Cal.App.4th 516, *Serra Canyon* held that by agreeing to the condition, the predecessor accepted the benefit of the permit, and because he did not seek judicial intervention to avoid the condition, the plaintiff was bound by the predecessor's waiver of its right to seek timely writ review. (*Serra Canyon Co., Ltd. v. California Coastal Com.*, *supra*, 120 Cal.App.4th at p. 668.) This was the case even where the plaintiff argued Commission was carrying out an unconstitutional taking of its property: "Compliance with procedural writ requirements 'remains a necessary predicate to institution of inverse condemnation proceedings' [Citation.] 'Regardless of whether [the plaintiff] pleads its cause of action as one for inverse condemnation or as a denial of due process, the essential underpinning of its recovery is the invalidity of the administrative action. That

26

action must be reviewed by petition for writ of administrative mandate.' " (*Id*. at p. 669.) And the *Serra Canyon* court made clear the rule applied even when the aggrieved individuals asserting inverse condemnation were successors in interest to prior owners who accepted the burdens and benefits of the Commission's conditional permits. (*Ibid*., citing *Ojavan*, at pp. 524-535.)

Here, there is no dispute that on September 20, 1979, following the appeals of permit No. F6760's approval, Commission granted Baker's permit on the condition that she record an irrevocable offer of dedication for public access. The Kretowiczes concede that during the appeals, Baker had completed her construction under permit No. F6760, as Commission so found in 2005 and 2011. Baker signed, recorded, and accepted the benefits of permit No. F6760 by constructing the authorized improvements. Though issued, that permit did not become final until the conclusion of the legal challenges, which resulted in Commission's imposition of the public access condition. (§ 30623 ["If an appeal of any action on any development by any local government or port governing body is filed with the commission, the operation and effect of that action shall be stayed pending a decision on appeal"]; see *Russian Hill Improv. Asso. v. Board of Permit Appeals* (1967) 66 Cal.2d 34, 39, fn. 11 [a permit achieves finality only when the right to invoke the discretionary reviewing authority has been exhausted]; *Gabric v. City of Rancho Palos Verdes* (1977) 73 Cal.App.3d 183, 203 ["A permit is deemed final when the administrative appeal has been finally decided or the time for appeal of the grant or

denial has expired"].) Baker participated in the appeals, involving a claim that the permit approval was absent required findings concerning public access,[8] and she assumed the risk that Commission might thereafter decide to impose new conditions to the permit under which she completed her construction. Commission in fact made this decision, which Baker did not challenge. These circumstances support Commission's finding that Baker accepted the permit's benefits, and the law compels our conclusion that after the permit became final, the Kretowiczes cannot now assert their constitutional and other challenges to Commission's actions, notwithstanding the passage of time.

Under the circumstances, we reject the Kretowiczes' arguments concerning collateral estoppel. That doctrine was not invoked by the trial court, and to the extent courts have dealt with it in this context (see *Bowman v. California Coastal Com.*, *supra*, 230 Cal.App.4th 1151-1152) the matter involved an entity in privity with a prior owner. (*Id*. at p. 1149 [family trust succeeded to owner who had applied for a coastal development permit]; see *Gikas v. Zolin* (1993) 6 Cal.4th 841, 849 [elements of collateral estoppel].) No such circumstances are presented here.

---

[8] Also, title 14 of the California Code of Regulations, section 13320, provides in part: "Upon receipt in the commission office of a timely valid appeal by a qualified appellant the executive director of the commission shall notify the permit applicant and the affected local government that the operation and effect of the coastal development permit has been stayed pending final action on the appeal by the commission as required by Section 30623 of the Public Resources Code." (See also *Mt. Holyoke Homes, LP v. California Coastal Com.*, *supra*, 167 Cal.App.4th at p. 834.)

28

We further reject the Kretowiczes' assertion that there is no evidentiary support, or any Commission finding, for the proposition that Baker became bound to the 1979 public access conditions by proceeding with construction under permit No. F6760. They argue the evidence does not support a finding that Baker accepted the 1979 conditions in reliance on that permit, "which had no access easement." They suggest Baker could not be bound by conditions unknown to her until after her construction was completed. The Kretowiczes also point to the trial court's statement of decision finding that "Baker eventually acknowledged the Commission's determination regarding the public easement," and assert Commission never made any such finding. According to the Kretowiczes, the trial court "could not supply a finding not made by looking at evidence in the record."

These arguments are predicated on the incorrect notion that Commission's decision on the appeal of permit No. F6760 somehow constituted a new permit decision or was entirely unrelated to permit No. F6760. These arguments also ignore record evidence that Baker was fully aware of, and participated in, the appeal proceedings on permit No. F6760, which put at issue the prospect of public access findings and Commission action to preserve such access. As stated, permit No. F6760 was not final pending the appeals, and did not become so until its conditions were fulfilled. It was not necessary that Baker expressly accept the permit condition. Her construction under that permit, and ensuing failure to challenge the Commission's decision to impose the public access conditions, is enough to support denial of the Kretowiczes' petition, regardless of the trial court's

29

reasoning.  (*Scott v. City of Del Mar* (1997) 58 Cal.App.4th 1296, 1305 [we review the trial court's order, not its reasoning, and affirm if it is correct on any theory apparent from the record]; *LT-WR, L.L.C. v. California Coastal Com.*, *supra*, 152 Cal.App.4th at p. 806, fn. 7.)

D.  *Estoppel and Other Equitable Defenses Do Not Apply*

The Kretowiczes contend the trial court erred by rejecting their claims that Commission should be estopped from enforcing the public access conditions imposed in 1979, or is subject to waiver and laches.  They point out Commission sought to enforce the conditions for the first time in 2001, after having been notified that Baker would not comply with the 1979 requirements.  According to the Kretowiczes, Commission's 22-year "silence" was not explained, and any public interest involved in obtaining access to the shoreline cannot outweigh the potential injustice to them, which assertedly is an unconstitutional physical invasion of their property.  We conclude no exceptional circumstances justify a finding of estoppel here.

"It is well established that 'an estoppel will not be applied against the government if to do so would effectively nullify "a strong rule of policy, adopted for the benefit of the public . . . ." '  [Citations.]  ' "The courts of this state have been careful to apply the rules of estoppel against a public agency only in those special cases where the interests of justice clearly require it." '  [Citation.]  The ' "facts upon which such an estoppel must rest go beyond the ordinary principles of estoppel and each case must be examined carefully and rigidly to be sure that a precedent is not established through which, by favoritism or

30

otherwise, the public interest may be mulcted or public policy defeated." ' "  (*Poway Royal Mobilehome Owners Assn. v. City of Poway* (2007) 149 Cal.App.4th 1460, 1471, quoting *City of Long Beach v. Mansell* (1970) 3 Cal.3d 462, 493 (*Mansell*); see also *County of Los Angeles v. Berk* (1980) 26 Cal.3d 201, 222; *City of South San Francisco v. Cypress Lawn Cemetery Assn.* (1992) 11 Cal.App.4th 916, 923.)  Thus, "[e]ven if the four elements of equitable estoppel are satisfied, the doctrine is inapplicable if the court determines that the avoidance of injustice in the particular case does not justify the adverse impact on public policy or the public interest."  (*Schafer v. City of Los Angeles*, *supra*, 237 Cal.App.4th at p. 1261.)  This inquiry is not solely a question of fact, but it is in part a question of law that must be considered from the point of view of a court of equity.  (*Lentz v. McMahon* (1989) 49 Cal.3d 393, 403; *Smith v. County of Santa Barbara* (1992) 7 Cal.App.4th 770, 776.)

In land use cases in particular, courts "severely limit[] the application of estoppel . . . ."  (*Schafer v. City of Los Angeles*, *supra*, 237 Cal.App.4th at p. 1262; see also *Golden Gate Water Ski Club v. County of Contra Costa* (2008) 165 Cal.App.4th 249, 259 ["[a] party 'faces daunting odds in establishing estoppel against a government entity in a land use case' "]; *West Washington Properties, LLC v. Department of Transportation* (2012) 210 Cal.App.4th 1136, 1146 ["the weight of the authority indicates government inaction rarely forms a proper basis to estop the government from enforcing a law intended to benefit the public"].)  The overriding concern " ' "is that public policy may be adversely affected by the creation of precedent where estoppel can too easily replace the

31

legally established substantive and procedural requirements for obtaining permits."

[Citation.]  Accordingly, estoppel can be invoked in the land use context in only "the

most extraordinary case where the injustice is great and the precedent set by the estoppel

is narrow." ' "  (*Schafer*, at p. 1263.)[9]

In *Mansell*, extraordinary circumstances warranted an estoppel when the

government had encouraged private development of tidelands that it had dredged, filled

and thus operated to reclaim since the turn of the century, resulting in the benefit to

thousands of residents of a significant array of public facilities for navigation and

recreation.  (*Mansell*, *supra*, 3 Cal.3d at pp. 470-471, 486, 500.)  The California

Constitution forbade the transfer of certain public tidelands to private persons (*id*. at p.

478), and so the court was presented with whether, in the face of such public policy

reflected in the constitutional provision, it could apply an estoppel effectively quieting

title in public lands in private persons.  There, the court held the "the rare combination of

government conduct and extensive reliance here involved will create an extremely

---

9       In such context, the elements of estoppel are that (1) " 'the party making the
admission by his declarations or conduct, was apprised of the true state of his own title' ";
(2) the party " 'made the admission with the express intention to deceive, or with such
careless and culpable negligence as to amount to constructive fraud' "; (3) " 'the other
party was not only destitute of all knowledge of the true state of the title, but of the means
of acquiring such knowledge' "; and (4) the other party " 'relied directly upon such
admission, and will be injured by allowing its truth to be disproved.' " (*Mansell*, *supra*, 3
Cal.3d at p. 490.)  The court made clear that the third requirement was "interpreted to
mean that a person seeking to raise an estoppel . . . be destitute not ' "of all possible
means of acquiring knowledge of the true state of the title, but rather of all convenient or
ready means to that end." ' " (*County of Los Angeles v. Berk*, *supra*, 26 Cal.3d at p. 222,
fn. 13; quoting *Mansell*, at pp. 490-491.)

32

narrow precedent for application in future cases. . . . We are here concerned with thousands of homeowners who, through the long continuing conduct of the government entities involved, have been led to believe and have acted upon the belief that the lands upon which they reside are their own private properties. Because similarly compelling circumstances will not often recur, the public policy [at issue] will not suffer substantial erosion as a result of the decision we reach today." (*Ibid.*)

To the contrary is *Feduniak v. California Coastal Com.* (2007) 148 Cal.App.4th 1346 (*Feduniak*), in which the court declined to estop Commission from enforcing cease and desist and restoration orders relating to an open space easement in the face of its regulatory inaction. There, the plaintiffs had purchased property that had been landscaped to include a three-hole golf course in violation of a 1983 permit restricting development of the property under an open space easement. (*Id*. at pp. 1352-1354.) When the plaintiffs purchased the property in 2000, the then owners did not disclose the easement or permit restrictions (*id*. at p. 1355), and plaintiffs obtained a preliminary title report but neither it nor the final report disclosed the easement restrictions. (*Ibid*.) Plaintiffs did not consult with Commission, check its files or otherwise rely on any representations or information from Commission in purchasing the property. (*Id*. at p. 1355.) Commission thereafter issued orders requiring plaintiffs to comply with the easement by removing the course and restoring the land to its natural state. (*Ibid*.)

The trial court found the plaintiffs had no actual knowledge of the recorded easement or permit restrictions, that Commission's acquiescence had contributed to their

lack of knowledge, and plaintiffs had relied on Commission's inaction. (*Feduniak*, *supra*, 148 Cal.App.4th at p. 1358.) The appellate court reversed. (*Id.* at p. 1351.) It refused to apply the doctrine of equitable estoppel notwithstanding plaintiffs' lack of knowledge of the easement and permit restrictions, Commission's failure to act, and the substantial expense to the landowners of restoring the land to its natural state. It held: "[E]stopping the Commission because of its prior regulatory inaction would nullify otherwise valid restrictions adopted for the public benefit . . . . Estopping the Commission does not punish the Commission. It would, however, injure the public, which has a strong interest in a scenic natural coastline with native vegetation, because it would indefinitely postpone the restoration of the site to that state, a restoration that has already been delayed for over 20 years. . . . [T]he people of the state, acting through the Legislature, have unequivocally voiced a strong preference for the natural state of the coast and deemed it to be a valuable asset that must be protected, preserved, restored, and maintained, especially in [environmentally sensitive habitat areas] and areas adjacent to them." (*Id.* at p. 1377.) "Moreover, applying estoppel because of regulatory inaction could undermine the Commission's ability to enforce existing and future permit restrictions on property along the entire coast that the Commission has not been able to monitor for compliance." (*Id.* at pp. 1377-1378.)

The Court of Appeal observed that the trial court had been persuaded by plaintiffs' argument that their property was not in or near an environmentally sensitive habitat. (*Feduniak*, *supra*, 148 Cal.App.4th at p. 1378.) However, Commission's designation of

34

the property as such was not subject to litigation or dispute, as the 60-day period to challenge the restriction had long expired before the plaintiffs purchased the property. (*Ibid*.) And the court rejected the plaintiffs' claim they were "innocent purchasers" because "once the period to challenge the restrictions had expired and they were recorded, they became immune from collateral attack by the original property owner *and successor owners*." (*Id*. at p. 1379.) On this same basis, the court rejected amicus arguments that the easement and permit conditions would be constitutionally suspect if they were presently imposed on the project because they did not meet the *Nollan*/*Dolan* standards. (*Id*. at p. 1379, fn. 11.[10]) The Court of Appeal acknowledged the costs to the plaintiffs of removing the golf course and losing its future enjoyment, but it held that individual loss of enjoyment did not outweigh the public's strong interest in eliminating on ongoing unpermitted development, finally restoring the area to its natural state, and protecting Commission's ability to protect existing and future easement and permit conditions. (*Id*. at p. 1380.) Accordingly, the matter was not an extraordinary case in which justice demanded the government be estopped. (*Ibid*.)

The Kretowiczes make much of the fact that in most of the cases binding a successor to a predecessor's agreed-upon permit conditions, including *Feduniak*, the

_____

[10]  We likewise reject amicus Pacific Legal Foundation's arguments raising the *Nollan*/*Dolan* requirements on grounds Baker, and in turn the Kretowiczes, are barred from challenging Commission's September 20, 1979 decision to impose the public access conditions. Pacific Legal Foundation argues that it does not concede, as it did in *Feduniak*, *supra*, 148 Cal.App.4th 1346, that it was too late to collaterally attack the permit conditions. Whether it concedes the point is irrelevant. We have already held that Baker's failure to challenge Commission's decision bars her from any attack on constitutional takings grounds, and that holding disposes of amicus's contention.

35

permit conditions or dedication were recorded. But those cases do not turn on the fact that public easement requirements were recorded, and indeed in *Feduniak*, the purchasers lacked any notice of the conditions, which were not reflected in the title report. The *Feduniak* plaintiffs' lack of notice and their "innocent purchaser" arguments did not persuade the appellate court, which decided the matter based on the prior owner's failure to challenge the condition. The Kretowiczes also seek to distinguish *Feduniak* on grounds this case presents Commission's failure to enforce a known violation. The record demonstrates Commission found Baker in violation and referred the matter to the attorney general for enforcement. However, Commission's knowledge of the violation does not by itself compel application of an estoppel against against it where the public interests at stake outweigh the Kretowiczes' private interests.

In view of the authorities discussed above, we conclude this case does not come close to the exceptional circumstances necessary to apply an estoppel against Commission. Any injustice to the Kretowiczes in requiring them to dedicate the required public access easements presents no ground to override the significant public interests at stake. Relevant here, the Coastal Act reflects " ' "a strong rule of policy, adopted for the benefit of the public" ' that implicate[s] matters of vital interest." (*Feduniak*, *supra*, 148 Cal.App.4th at pp. 1376-1377, quoting *Mansell*, 3 Cal.3d at p. 493.) The California Supreme Court has acknowledged that this state has "a clearly enunciated public policy . . . in favor of allowing public access to shoreline areas." (*County of Los Angeles v. Berk*, *supra*, 26 Cal.3d at p. 222.) And this court has observed that a "core principle[]

36

of the Coastal Act is to maximize public access to the coast, to the extent feasible." (*City of Dana Point v. California Coastal Com.* (2013) 217 Cal.App.4th 170, 185.) One of the basic goals for the coastal zone is to " ' "[m]aximize public access to and along the coast and maximize public recreational opportunities in the coastal zone consistent with sound resources conservation principles and constitutionally protected rights of private property owners." ' " (*Ibid.*, see § 30001.5, subd. (c).) To that end, the Coastal Act implements its public access goals via section 30210, which states in part: "In carrying out the requirement of Section 4 of Article X of the California Constitution, maximum access, which shall be conspicuously posted, and recreational opportunities shall be provided for all the people consistent with public safety needs and the need to protect public rights, rights of private property owners, and natural resource areas from overuse." Section 30212 provides that subject to certain exceptions, "Public access from the nearest public roadway to the shoreline and along the coast shall be provided in new development projects." (§ 30212, subd. (a); see also *City of Dana Point*, at p. 185.)

Thus, "[t]o allow the raising of an estoppel to defeat the claim of public right here involved would be manifestly contrary to this policy." (*County of Los Angeles v. Berk*, *supra*, 26 Cal.3d at p. 222.) These principles likewise compel us to reject the Kretowiczes' laches claim, as well as its claim that Commission waived its right to enforce the 1979 dedication requirement as against later purchasers. (*Ibid.*; *West Washington Properties, LLC v. Department of Transportation*, *supra*, 210 Cal.App.4th at p. 1150; *City of Santa Cruz v. Pac. Gas & Elec. Co.* (2000) 82 Cal.App.4th 1167, 1179.)

37

Commission sought to enforce Baker's violation, but the attorney general did not pursue the matter. We do not perceive Commission's ensuing inaction as knowingly assenting to the violation or indicating an actual intention to give up its rights. (E.g., *Feduniak*, *supra*, 148 Cal.App.4th at p. 1367 [declining to find Commission's inaction signaled regulatory acceptance, stating it "could just as well reflect . . . bureaucratic, budgetary, or personnel limitations on enforcement of easements and permit restrictions"].)

E. *Code of Civil Procedure Section 315 Statute of Limitations*

Code of Civil Procedure section 315 provides that "[t]he people of this State will not sue any person for or in respect to any real property, or the issues or profits thereof, by reason of the right or title of the people to the same, unless: [¶] 1. Such right or title shall have accrued within ten years before any action or other proceeding for the same is commenced . . . ." " 'The words "right or title" in this passage are to be construed to mean "cause of action." ' " (*Marin Healthcare Dist. v. Sutter Health* (2002) 103 Cal.App.4th 861, 874.) If an action brought by a state agency is deemed to seek the recovery of real property "by reason of the right or title of the people to the same," it would be subject to the 10-year limitations period specified in Code of Civil Procedure section 315. (*Ibid.*)

Pointing out that Commission is an administrative agency of the state, the Kretowiczes argue that Commission is barred from enforcing the 1979 permit conditions under the above limitations period since it did not act before September 20, 1989. In making this argument, the Kretowiczes characterize Commission's position as claiming

38

the public has a "perpetual right to receive an option" to acquire the property. As Commission points out, however, it did not sue the Kretowiczes, it is defending its permit decision in this mandate proceeding. Having found the 1979 public access conditions accepted by Baker and valid as against the Kretowiczes, Commission is entitled to enforce them notwithstanding the passage of time. (See *Feduniak*, *supra*, 148 Cal.App.4th 1346.)

F. *Bona Fide Purchaser Arguments*

Amicus Pacific Legal Foundation contends that the Kretowiczes are bona fide purchasers for value as they had no actual or constructive notice of the 1979 public access conditions, and thus Commission cannot enforce the conditions against them. They maintain it is undisputed that the Kretowiczes had a good-faith belief the property was unencumbered, and that the record shows the Kretowiczes lacked actual or constructive notice of the conditions. For the latter proposition, amicus cites to Ure Kretowicz's own self-serving statement to Commission, and a letter from the Kretowiczes' counsel. Relying on *Feduniak*, *supra*, 148 Cal.App.4th at page 1353, as well as a magazine article, they argue public easements dedicated at Commission's behest must be recorded, and that the strong public policies furthered by recording statutes outweigh the public benefit from additional public beach access.

Amicus's bona fide purchaser arguments are irrelevant in view of our conclusion that the Kretowiczes are bound by the 1979 public access conditions due to Baker's

39

failure to timely challenge Commission's decision to impose them.  (Accord, *Feduniak*,

*supra*, 148 Cal.App.4th at pp. 1378-1379.)[11]

---

[11]    We observe in any event that Commission expressly found that Ure Kretowicz would have learned of the permit requirements contained in Commission files on reasonable inquiry, and this finding, which amounts to one of constructive notice, is supported by the evidence.  Civil Code section 19 provides:  "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact."  The term "prudent" is defined as "marked by wisdom or judiciousness"; "shrewd in the management of practical affairs"; and "marked by circumspection."  (Merriam-Webster's Collegiate Dict. (11th ed. 2006) p. 1002.)  At the time the Kretowiczes purchased the property in 1994, the La Jolla LCP discussed shoreline access at Princess Street and alluded to Commission's dedication requirement at issue.  Ure Kretowicz read the La Jolla LCP when he purchased the property, and the information was sufficient to create a duty on Kretowicz, an experienced and prudent developer purchasing the bluff-top coastal property on Princess Street, to inquire with Commission about additional facts concerning that dedication.  "If the circumstances are such as to put a prudent person on inquiry, that is all that is required."  (*Pellissier v. Title Guarantee, etc. Co.* (1929) 208 Cal. 172, 184-185.)

DISPOSITION

The judgment is affirmed.

O'ROURKE, J.

WE CONCUR:

McCONNELL, P. J.

AARON, J.